JANTEL PAYNE ET AL. *v.* RONALD CANDELORA ET AL.

Superior Court      Judicial District of      File No. CV910325370
New Haven

Memorandum filed April 4, 1997

*Alexander Scheirer*, for the plaintiffs.

*Regnier, Taylor, Curran & Eddy*, for the named defendant.

*McNerney, Fitzgerald & Tiernan*, for the defendant Vincent Liberti.

*Delaney, Zemetis, Donahue, Durham & Noonan* and the *Federal Deposit Insurance Corporation*, for the substitute defendant Federal Deposit Insurance Corporation.

LAGER, J. The present case is a civil action for personal injuries based on alleged exposure to lead-based paint. The plaintiffs are Jantel Payne and her minor children, Keisha Barnes and Isaiah Barnes. The plaintiffs have alleged that they resided in the first floor apartment of 36 Mechanic Street in New Haven, from March 1, 1989, to on or about September 1, 1991. The defendant Vincent Liberti owned the property from January 1, 1988, through February 15, 1991. First Constitution Bank[1] (First Constitution) was the mortgagee of the property. Liberti transferred control to First Constitution on October 1, 1990, and it managed the property and collected the rents from then through February 15, 1991. The named defendant, Ronald Candelora, took title to the property on February 15, 1991.

---

[1] The Federal Deposit Insurance Corporation, as receiver of First Constitution Bank, was substituted as a defendant on January 4, 1993.

Liberti has moved for summary judgment on the first and fourth counts of the second revised complaint dated April 28, 1992, and filed May 5, 1992. The first count is premised on negligence per se and the fourth count alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42a-110a et seq., based on violations of statute and ordinance. Liberti asserts that there is no material issue of fact as to his liability on these counts. In support of his motion, he submitted a supporting memorandum of law and portions of the depositions of Payne and Kenneth Rubano of the New Haven department of health. The plaintiffs filed a memorandum in opposition to the motion on March 7, 1997, accompanied by an affidavit of Payne. The motion was heard before this court on March 10, 1997, at which time Liberti filed a supplemental memorandum in support of his motion with another portion of Rubano's deposition.

"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) *Doty* v. *Mucci*, 238 Conn. 800, 805–806, 679 A.2d 945 (1996).

Summary judgment is "appropriate only if a fair and reasonable person could conclude only one way. . . .

The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Citations omitted; internal quotation marks omitted.) *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 751–52, 660 A.2d 810 (1995).

In order to hold Liberti liable under the first and fourth counts for violations of statute and ordinance, it must be demonstrated that Liberti had "actual or constructive notice" of the defects violative of law "prior to the violation." *Gore* v. *People's Savings Bank*, 235 Conn. 360, 385, 665 A.2d 1341 (1995) (*Gore I*). According to the commentary to 2 Restatement (Second), Property, Landlord and Tenant, § 17.6, comment (c) (1977), cited with approval in *Gore* v. *People's Savings Bank*, supra, 384–85, a landlord ordinarily "will be chargeable with notice of conditions which existed prior to the time that the tenant takes possession. Where the condition arises *after* the tenant takes possession . . . the landlord will not be liable . . . until he has had a reasonable opportunity to remedy the condition after the tenant notifies him of it." (Emphasis added.)

The burden of proving notice is allocated differently depending on whether it is alleged that the condition arose prior to or after the tenancy began. If it is alleged that the condition arose prior to the tenancy, then the landlord is charged with constructive notice and must then plead and prove lack of notice. If, however, it is alleged that the condition arose after the tenancy began, then the burden is on the plaintiff to plead and to prove

that the landlord had actual notice of the condition and an opportunity to correct it. *Gore* v. *People's Savings Bank*, 40 Conn. App. 219, 224 n.5, 670 A.2d 332 (1996) (*Gore II*); see also *Campbell* v. *Diduca*, Superior Court, judicial district of New Haven, Docket No. CV950371943S (March 14, 1997) (*Lager, J.*); *Sanchez* v. *General Urban Corp.*, Superior Court, judicial district of New Haven, Docket No. CV950378774S (February 6, 1997) (*Lager, J.*).

The plaintiffs do not allege that a lead condition violative of statute or ordinance existed prior to their tenancy. The complaint alleges that an inspection of the apartment on January 4, 1991, by the New Haven department of health revealed the presence of lead paint in amounts that violated statute and local ordinance. Payne testified in her deposition that the apartment had been recently painted when they first moved in and that there was no peeling, flaking or chipping paint in the apartment, on the trim, in the common areas and on the exterior of the building. She also testified that the condition of the paint in the interior of the apartment deteriorated over time in that it "buckled up." Furthermore, counsel conceded during the argument of this motion that the defective condition arose while the plaintiffs were living in the apartment.

Thus, under *Gore I* and *Gore II*, since the plaintiffs claim that the defective lead condition arose during the tenancy, Liberti can only be held liable to the plaintiffs if he received actual notice of the condition and had an opportunity to correct it. The burden is on the plaintiffs to allege and to prove these facts. The complaint does not allege notice to Liberti and the undisputed facts establish not only that Liberti did not receive notice, but also that he had relinquished control over the premises before the defective lead condition was discovered.

In his affidavit, Liberti states that when the plaintiffs occupied the apartment, the interior had been freshly painted and that there was no cracking, chipping or peeling paint on the premises. He also states that he had no knowledge of the existence of lead paint before the plaintiffs occupied the premises and that he received no notice of the existence of lead paint prior to transferring possession, control and management of the property to First Constitution on October 1, 1990. Payne has testified that she did not have any complaints about the condition of the property before First Constitution took it over and that she did not complain to Liberti about the "buckled up" paint condition. Although Payne's testimony suggests some confusion as to whom she notified of the presence of lead paint in the apartment, her sworn answer to an interrogatory on this subject[2] states that the "City of New Haven Department of Health [made] the notification of a lead hazard existing at the premises to . . . Candelora via letter on March 6, 1991." This is consistent with the deposition testimony of Rubano, based on records of the New Haven department of health, that the premises were inspected in January, 1991, and that notification to the building owner was made on March 6, 1991. It is undisputed that Liberti was no longer the record owner of the property on March 6, 1991.

Furthermore, the undisputed facts establish that Liberti relinquished control over the premises to First Constitution on October 1, 1990, well before the January, 1991 inspection that revealed the presence of lead paint in amounts that violated statute and local ordinance. Having relinquished control over the premises, Liberti had no duty to the plaintiffs under the common law. Cf. *Gore* v. *People's Savings Bank*, supra, 235 Conn.

---

[2] Interrogatory eighteen reads in pertinent part: "After becoming aware of the existence of lead paint at the subject premises . . . please identify any individual(s) or entity(ies) *whom you notified* . . . ." (Emphasis added.)

373; see also *Bryant* v. *Joseph Contracting*, New York City Civil Court, Index No. 119263/95 (December 12, 1996) (Lebedeff, J.).

Accordingly, because there is no genuine issue of material fact that Liberti received actual notice of a defective lead paint condition prior to October 1, 1990, or indeed at any time, after which he no longer had control of the premises, summary judgment should enter in his favor on count one. Summary judgment should also enter in his favor for the fourth count, alleging a violation of CUTPA, because its underlying premise requires a finding of liability on the negligence per se claim.