MICHAEL S. SIMMS *v.* RICHARD CANDELA ET AL.

Superior Court Judicial District of File No. CV98040784S
 New Haven

Memorandum filed March 4, 1998

 

*Snow, Atticks & Hollow,* for the plaintiff.

*Larry H. Lewis,* for the defendants.

BLUE, J. This case raises an important question concerning the application of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., to claims involving personal injuries. The plaintiff, Michael S. Simms, alleges that he was injured by falling on a defective outside stairway leading to his apartment building and that the defect (a build up of ice) resulted from a building condition that violated Connecticut's Landlord and Tenant Act, General Statutes § 47a-1 et seq. Citing this alleged violation, he has added a CUTPA claim to his complaint. Although slip and fall allegations and CUTPA claims are unfamiliar bedfellows, their union in this case is not quite as unnatural as the defendant owners think that it is. For the reasons set forth below, the CUTPA allegation here survives a motion to strike.

Simms alleges that on December 14, 1995, he fell on the outside stairs leading to his residential apartment building in Guilford. He claims that the roof above the stairs was not equipped with a gutter and that, as a result, a dangerous amount of ice built up on the stairs, causing his fall and resultant injuries. He commenced this action against the owners of the building in December, 1997. His complaint is in three counts. The first count alleges common law negligence. The second count, claiming negligence per se, alleges violations of several statutory provisions, including General Statutes § 47a-51 (d), which provides that all rain water shall be

"drained and conveyed from the roof" of a tenement house. The third count alleges a CUTPA violation.

The defendant owners filed the motion to strike now before the court on January 15, 1998. The motion attacks only the third count of the complaint. The motion was heard on February 23, 1998.

The vast majority of CUTPA claims involve trade injuries. There is surprisingly little jurisprudence in Connecticut on the applicability of the statute to personal injury claims, and none of the jurisprudence at the appellate level is directly on point. In order to resolve properly the question now before the court, it is necessary first to examine some principles.

General Statutes § 42-110b (a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Although in determining whether certain acts constitute a violation of CUTPA our courts frequently refer to the well known cigarette rule of the Federal Trade Commission; see *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 33–34 n.18, 699 A.2d 964 (1997); the cigarette rule analysis is unnecessary here. The text of CUTPA expressly defines "trade" and "commerce" as including the rent or lease of real property. General Statutes § 42-110a (4). In addition, our Supreme Court has held, in an important early case, that a landlord's violation of the standards of housing safety and habitability set forth in the landlord and tenant statutes offends public policy and amounts to an unfair act or practice in violation of CUTPA. *Conaway* v. *Prestia*, 191 Conn. 484, 493, 464 A.2d 847 (1983). If Simms, a tenant, were claiming some injury to his property interests resulting from his landlord's violation of the Landlord and Tenant Act, *Conaway* would establish that he had stated a CUTPA claim.

As the defendant owners point out, however, the injury complained of here is different from the injury at issue in *Conaway*. *Conaway* was an action brought by a class of tenants seeking recovery of rental payments. Id., 485. The Supreme Court held that they were entitled to seek "the diminution of the rental value occasioned by the defendants' wrongful conduct." Id., 495. The plaintiff here, in contrast, seeks compensatory damages for a personal injury sustained by a fall on the landlord's property. There are at least some reasons to conclude that this difference in the kind of injury complained of is important.

CUTPA is textually concerned with matters of "trade or commerce." General Statutes § 42-110b (a). Although our Supreme Court has frequently stated that "[u]njustified consumer injury" is the hallmark of a CUTPA violation; (internal quotation marks omitted) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 592, 657 A.2d 212 (1995); it has done so in the context of trade, rather than personal, injuries. The injury complained of in *Conaway* is a good example. The plaintiffs in that case got less than they bargained for. It happened that they were tenants, but in economic terms they were proceeding as purchasers of the use of rental property who got less than they were entitled to. Viewed in that light, they were essentially purchasers of shoddy goods, and like purchasers of faulty toasters or malfunctioning cars, they were entitled to certain economic remedies under the law to give them the benefit of their bargain.

This case, at first blush, seems different. Simms isn't complaining that the rental value of his apartment has been diminished by the lack of a gutter and the build up of ice on the steps, and he certainly is not seeking to have his damages defined by the amount of any such diminution. He is seeking personal injury damages

resulting from a fall. This may be an injury to a consumer, but it is not a trade injury like the one at issue in *Conaway*.

This economic argument is buttressed, at least to some extent, by legislative history. CUTPA was plainly intended to redress trade injuries. Its sponsor in the House of Representatives stated that it would give "honest businessmen great protection [from] deceptive or unscrupulous competitors who by unfair methods of competition and deceptive advertising . . . unlawfully divert trade away from law abiding businessmen." 16 H.R. Proc., Pt. 14, 1973 Sess., p. 7323, remarks of Representative Howard A. Newman.

Representative Newman also explained that CUTPA was modeled after the Federal Trade Commission Act of 1914 (now codified at 15 U.S.C. § 41 et seq.). 16 H.R. Proc., supra, p. 7321. CUTPA's prohibition of "unfair or deceptive acts or practices" mirrors that of 15 U.S.C. § 45 (a) (1). The Federal Trade Commission Act was originally designed to regulate anticompetitive business practices. The Senate committee on interstate commerce, in recommending the bill that ultimately became the Federal Trade Commission Act, explained that experience in the enforcement of the Sherman Antitrust Act (now codified at 15 U.S.C. § 1) "as shown in the Standard Oil and American Tobacco decrees of dissolution, and in the frequent efforts of combinations to make voluntary adjustment with the Department of Justice, establishes that the question involved is administrative as well as legislative and judicial." S. Rep. No. 597, 63rd Cong., 2nd Sess., 8 (1914). The cases referred to are *Standard Oil Co.* v. *United States*, 221 U.S. 1, 31 S. Ct. 632, 55 L. Ed. 663 (1911), and *United States* v. *American Tobacco Co.*, 221 U.S. 106, 31 S. Ct. 632, 55 L. Ed. 663 (1911), each a landmark antitrust case involving a colossal business combination. The specific examples of "unfair competition" listed in the report of the senate

committee on interstate commerce are "local price cut-
ting, interlocking directorates, and holding companies
intended to restrain substantial competition." S. Rep.
No. 597, supra, 13. These examples have little in com-
mon with the problem presented in this case.

It is, however, well established that unfair trade prac-
tice statutes are to be interpreted dynamically rather
than statically. Our courts are not throttled by the dead
hand of 1914. "[S]tatutory prohibitions often go beyond
the principal evil to cover reasonably comparable evils,
and it is ultimately the provisions of our laws rather
than the principal concerns of our legislators by which
we are governed." *Oncale* v. *Sundowner Offshore Ser-
vices, Inc.*, 523 U.S. 75, 79, 118 S. Ct. 998, 140 L. Ed.
2d 201 (1998). The United States Supreme Court long
ago pointed out that the term " 'unfair methods of com-
petition' " was intended to be a broad and flexible
phrase. *Federal Trade Commission* v. *R. F. Keppel &
Bro., Inc.*, 291 U.S. 304, 311–12, 54 S. Ct. 423, 78 L. Ed.
814 (1934). It is, the court explained, a phrase that "does
not admit of precise definition but the meaning and
application of which must be arrived at by . . . the
gradual process of judicial inclusion and exclusion."
(Internal quotation marks omitted.) Id., 312.

Significantly, the federal trade commission has
adopted a flexible interpretation of the federal statute
and has construed it as prohibiting practices that, while
inflicting no obvious trade injuries, are dangerous to
consumers. It has specifically concluded that failure to
warn of a defective or dangerous condition that could
cause personal injury amounts to an unfair trade prac-
tice. *In re International Harvester Co.*, 104 F.T.C. 949,
1066–67 (1984). This construction is of particular impor-
tance because CUTPA expressly directs the courts of
this state to be guided by the interpretations of the
federal trade commission. General Statutes § 42-110b

(b); see also *Maillet* v. *ATF-Davidson Co.*, 407 Mass. 185, 192, 552 N.E.2d 95 (1990).

At the same time, it is clear that not every negligence claim can be successfully recast as a CUTPA claim. See *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 32. *Haynes*, which holds that garden variety medical malpractice does not amount to a CUTPA violation, explains that the touchstone for a legally sufficient CUTPA claim is the implication that the acts complained of have "an entrepreneurial or business aspect." Id., 38. This is obviously an appropriate test to apply in this case.

The violation complained of here is the absence of a gutter in an apartment house resulting in a dangerous condition. While this may indeed be an act of negligence (and a violation of the Landlord and Tenant Act to boot), it also implicates the enterpreneurial aspect of the landlord's business. Renting an apartment building without adequate gutters may be financially advantageous to the landlord and increase his margin of profit. Conforming to the requirements of the Landlord and Tenant Act costs money. Public policy nevertheless requires landlords to expend such money. When they do not, CUTPA is properly invoked.

This reasoning does not mean that every slip and fall by a tenant can be turned into a CUTPA violation. If a landlord negligently drops a banana peel on the steps and a tenant falls as a result, the landlord may well be liable in negligence, but there would be no CUTPA violation. The failure to make a structural repair required by the state habitability statutes is, however, different. *Haynes* hints at just this distinction. Although unskillful surgery cannot form the basis of a CUTPA violation, "medical malpractice based on the adequacy of staffing, training, equipment or support personnel" can still result in a legally sufficient CUTPA claim. Id.

In that case, like this, the person sued has enhanced his economic condition by failing to make the expenditures that public policy demands.

A number of other considerations weigh in the balance as well. As a purely textual matter, General Statutes § 42-110g (a) provides in pertinent part that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages." This provision does not distinguish between trade injuries and other types of economic injuries. Simms, like most personal injury plaintiffs, alleges that he has suffered economic losses, including medical expenses and lost wages, as a result of his fall. Assuming this allegation to be true, he is a "person who suffers [an] ascertainable loss of money." There is, of course, an issue as to whether this loss resulted from the CUTPA violation complained of, but that is a factual issue appropriately left to the judge or jury hearing the case.

Significantly, "the gradual process of judicial inclusion and exclusion"; (internal quotation marks omitted) *Federal Trade Commission* v. *R. F. Keppel & Bro., Inc.*, supra, 291 U.S. 312; has worked, in Connecticut, to include at least some personal injury claims within the ambit of CUTPA. The most notable example of this trend is a series of landlord-tenant cases involving lead paint poisoning. Two published Superior Court cases have held that renting premises in which there is lead-based paint that exceeds the statutory limits is contrary to public policy and that tenants poisoned by that paint can bring a cause of action for damages under CUTPA. *Payne* v. *Candelora*, 45 Conn. Sup. 191, 197, 706 A.2d 22 (1997); *Hardy* v. *Griffin*, 41 Conn. Sup. 283, 287, 569 A.2d 49 (1989). Several unpublished Superior Court lead paint cases also follow this authority. The lead

paint cases—which involve tenants injured by physical conditions that violate state habitability statutes—are functionally indistinguishable from this case.

In addition to *Haynes*, the medical malpractice case discussed previously, three personal injury cases involving CUTPA claims have made their way to our appellate courts. *Haesche* v. *Kissner*, 229 Conn. 213, 640 A.2d 89 (1994); *Suarez* v. *Sordo*, 43 Conn. App. 756, 685 A.2d 1144 (1996), cert. denied, 240 Conn. 906, 688 A.2d 334 (1997); *Pagani* v. *BT II, Ltd. Partnership*, 24 Conn. App. 739, 592 A.2d 397, cert. dismissed, 220 Conn. 902, 593 A.2d 968 (1991). None of these cases have involved the Landlord and Tenant Act or any comparable regulation. It was found in each case that the injury complained of was not caused by a CUTPA violation. The analyses of these cases turn on the specific facts in question. There is no pronouncement—or even intimation—in these opinions that personal injury allegations and CUTPA claims do not mix.

It has increasingly been recognized in other jurisdictions that personal injury claims may be pursued, where appropriate, by invoking statutes prohibiting unfair trade practices. See, e.g., *Pope* v. *Rollins Protective Services Co.*, 703 F.2d 197, 204–205 (5th Cir. 1983); *Kociemba* v. *G.D. Searle & Co.*, 680 F. Sup. 1293, 1304 (D. Minn. 1988); *Pomianowski* v. *Merle Norman Cosmetics, Inc.*, 507 F. Sup. 435, 438 (S.D. Ohio 1980); *Maurer* v. *Cerkvenik-Anderson Travel, Inc.*, 181 Ariz. 294, 297, 890 P.2d 69 (1994); *Duncavage* v. *Allen*, 147 Ill. App. 3d 88, 101–102, 497 N.E.2d 433 (1986), cert. denied, 113 Ill. 2d 573, 505 N.E.2d 352 (1987); *International Armament Corp.* v. *King*, 686 S.W.2d 595, 599 (Tex. 1985). These decisions tend to be long on facts and short on theory. Not all of them can be squared with *Haynes'* focus on the entrepreneurial or business aspects of the acts complained of. This is to be expected with respect to a statutory scheme that "does not admit

of precise definition . . . ." (Internal quotation marks omitted.) *Federal Trade Commission* v. *R. F. Keppel & Bro., Inc.*, supra, 291 U.S. 312. "[T]he gradual process of judicial inclusion and exclusion" is unlikely to produce a tapestry of unvarying weave. (Internal quotation marks omitted.) Id.

The out-of-state decisions just cited do, however, show that the invocation of an unfair trade practices claim in a personal injury suit is hardly revolutionary or unprecedented. Each claim must be evaluated in light of public policy and the particular factual allegations that accompany the claim. The claim presented here alleges a violation of the public policy contained in the Landlord and Tendant Act. It passes the *Haynes* test because the entrepreneurial aspects of the landlord's business are implicated. Under these circumstances, the third count of the complaint alleges a legally sufficient CUTPA claim.

The motion to strike is denied.