[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 12551 ON MOTION TO STRIKE
In this case, the plaintiffs are all past or present owners of real property located near a certain waste landfill in New Milford, Connecticut and the defendants are the owners and operators of that landfill. In the fifth count of their revised amended complaint, the plaintiffs seek to recover damages from the defendants for certain losses they claim to have suffered due to the defendants' placement and operation of the subject landfill, in alleged violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statute § 42-110 et seq.
The defendants have now moved to strike the plaintiffs' CUTPA claim[1] on two grounds: first, that since the plaintiffs have no commercial relationship with the defendants, their claim does not arise out of such a relationship, as allegedly is required to bring a private remedy action under CUTPA; and second, that the placement and maintenance of a solid waste landfill are closely regulated activities which are beyond the reach of CUTPA under General Statutes § 42-110c. For the following reasons, the Court concludes that the fifth count of the plaintiffs' pending complaint must be stricken for failure to state a claim upon which relief can be granted.
 I
"`The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff.' If facts provable in a complaint would support a cause of action, the motion to strike must be denied." Faulkner v. United Technologies Corp., 240 Conn. 576,580, 693 A.2d 293 (1997) (quoting Waters v. Autori,236 Conn. 820, 825-26, 676 A.2d 357 (1996)).
 II
The plaintiffs filed the fifth count of their revised amended complaint under General Statutes § 42-110g, which confers the right to bring a private civil action to recover "actual damages," punitive damages, equitable relief and attorneys fees CT Page 12552 upon
 any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by [General Statutes § 142-110b[.]
Section 42-110b, in turn, contains the following prohibitory language:
 No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.
Finally, General Statutes § 42-110a provides the following definitions of essential terms used in the foregoing statutes.
As used in this chapter:
 (3) "Person" means a natural person, corporation, limited liability company, trust, partnership, incorporated or unincorporated association, and any other legal entity;
 (4) "Trade" and "commerce" means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state.
The plaintiffs contend that the foregoing provisions must be read literally to grant a private right of action under CUTPA toany "person," as that term is defined in Section 42-110a(3), who has "suffer[ed] any ascertainable loss of money or property . . . as a result of the [defendant's] use or employment," C.G.S. § 42-110g(a) (emphasis added), of any
"unfair method of competition [or] unfair or deceptive act or practice in the conduct of any trade or business." C.G.S. § 42-110b(a) (emphasis added). Under such a reading, there would CT Page 12553 be no restriction upon who could lawfully seek relief under Section 42-110g, except that contained in the statutory definition of the term "person." A private remedy action under CUTPA could therefore be brought by any statutorily defined "person," whether or not it had any kind of commercial relationship with the defendant, and whether or not, by the same token, it suffered its loss in the course and as a result of such a relationship. Any ascertainable loss of any type or description would thus be actionable under CUTPA as long as it was proximately caused by the use or employment of methods, acts or practices prohibited by Section 42-110b.
The plaintiffs claim support for their broad reading of the Section 42-110g not only in its words, which must be strictly enforced, without resort to construction, if their meaning is plain and unambiguous, but in General Statutes § 42-110b(d), which provides that
 It is the intention of the Legislature that this chapter be remedial and be so construed.
Consistent with this provision, our Supreme Court has long held that CUTPA must be liberally construed "to effectuate its public policy goals." Sportsmen's Boating Corp. v. Hensley,192 Conn. 747, 755-56, 474 A.2d 780 (1984). Thus in Web PressServices Corp. v. New London Motors, Inc., 203 Conn. 342, 354,533 A.2d 57 (1987), the Court declared that
 In enacting CUTPA, the Legislature intended to create an expansive act which would provide relief to persons suffering "any ascertainable loss" as a result of an unfair or deceptive trade practice General Statutes § 42-110g(a). To that end, the Legislature expressly provided that "[i]t is the intention of the Legislature that this chapter be remedied and be so construed."
The plaintiffs note particularly that the Supreme Court has rejected the claim that CUTPA can only be invoked by one who has a "consumer relationship" with the defendant, McLaughlin Ford,Inc. v. Ford Motor Co., 192 Conn. 558, 566-67, 473 A.2d 1185
(1984), declaring instead that, "CUTPA, by its own terms, applies to a broad spectrum of commercial activity." Larsen ChelseyRealty Co. v. Larsen, 232 Conn. 480, 492, 656 A.2d 1009 (1985). CT Page 12554 They also note that under the Federal Trade Commission's so-called "cigarette rule," which Connecticut courts use to evaluate claims of unfairness under CUTPA, substantial injury to consumers, competitors or other business people need not be pleaded or proved to bring and establish a valid claim. See, e.g., CheshireMortgage Service, Inc. v. Montes, 223 Conn. 80, 106,612 A.2d 1130 (1992). Against this background, the plaintiffs argue that their alleged lack of a commercial relationship with the defendants cannot bar their CUTPA claim.
The defendants counter the foregoing analysis by pointing to a series of Supreme and Superior Court decisions that purportedly limit the right to bring a private remedy action under CUTPA to those most likely to be harmed by the unfair and deceptive conduct it prohibits, to wit: those who compete with unscrupulous merchants, those who consume their goods or services, and other business persons who interact with them in the particular market where they engage in the prohibited conduct. On the basis of these cases, the defendants argue and this Court is persuaded that the fifth count of the plaintiffs' revised amended complaint must be stricken for failure to state a claim upon which relief can be granted.
The defendants first concede, as they must, that CUTPA imposes no requirement of a consumer relationship between the plaintiff and the defendant. Thus in McLaughlin Ford, Inc. v.Ford Motor Co. supra, where a franchisee had not been permitted to pursue a CUTPA claim against its franchisor for failure to allege a consumer relationship between them, the Supreme Court reversed, flatly stating:
 We agree with the plaintiff that CUTPA is not limited to conduct involving consumer injury. General Statute § 42-110g(a) provides in part: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by Section 42-110b, may bring an action . . . to recover actual damages." Person, as defined by the statute, includes: "a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity." General Statutes § 42-110a(3). CT Page 12555 The statute's coverage is broad and its purpose remedial. Hinchliffe v. American Motors Corporation, 184 Conn. 607, 616, 440 A.2d 810 (1981). The General Assembly has not seen fit to limit expressly the statute's coverage for instances involving consumer injury, and we decline to insert that limitation.
Id. at 566-67. Significantly, however, the Court did not conclude the foregoing textual analysis, as it might have, by declaring that the broad language of Section 42-110g must be read literally to grant a right of action to any person who suffers any kind of ascertainable loss as a result of any conduct prohibited by CUTPA. Instead, it ruled more narrowly:
 that a competitor or other business person can maintain a CUTPA cause of action without showing consumer injury. See Murphy v. McNamera, 36 Conn. Sup. 183, 188, 416 A.2d 170 (1979); see generally Langer 
Ormstedt, "The Connecticut Unfair Trade Practices Act," 54 Conn. B.J. 388 (1980).
Id. at 567. (Emphasis added.)
Standing alone, the McLaughlin Ford decision is arguably subject to two conflicting interpretations. The first, contended for by the defendants, is that the Supreme Court's explicit extension of a private right of action under CUTPA from the consumers of unscrupulous business persons to their competitors and other business persons harmed by their unfair or deceptive conduct implicitly denied such a right of action to all others. The second, espoused by the plaintiffs, is that the Supreme Court's extension of such a right of action to competitors and other business persons was merely an appropriately limited answer to the only question squarely presented for its decision: whether the plaintiff franchisee, a business person, could properly sue the defendant franchisor, another business person, under CUTPA. The Court concludes that the former interpretation is correct for the following reasons:
First, though the McLaughlin Ford Court did not offer any further explanation for its ruling on this issue, it expressly relied on one Superior Court decision and one law review article CT Page 12556 which shed useful light upon it. The decision in question wasMurphy v. McNamera, supra, 36 Conn. Sup. Ct 188, where Judge Berdon, in a detailed exposition of the purposes of CUTPA, succinctly identified the Act's intended beneficiaries in the following passage:
 The Legislature . . . directed that the CUTPA "be remedial and be so construed." General Statutes § 42-110b(d). The act therefore must be liberally construed. See United Aircraft Corporation v. Fusari, 163 Conn. 401, 410 [(1972)]. It is obvious that the Legislature has perspicaciously mandated the court to put muscle into this remedial legislation in order to protect the consuming public from unfair and deceptive trade practices. Protection is afforded not only to the consumer, but also to merchants engaged in legitimate business practices, because the act eradicates unfairness and deception employed by unscrupulous competitors.
Id. The Supreme Court's reference to this part of Judge Berdon's analysis was no mere accident. It clearly suggests that the reason for extending a private right of action to competitors and other business persons is that they, like the consuming public, were those whom the Act was designed to protect.
Consistent with this reading, the law review article cited inMcLaughlin Ford makes similar observations as to the intended scope of CUTPA. It notes specifically that the 1979 amendment to the Act, which changed its wording to grant a right of action to any person who suffers an ascertainable loss of money or property,
 has finally clarified the standing requirements under the private remedy action. The current statute now clearly grants standing to any "person" who suffers an ascertainable loss of money or property, and "person" is defined in Section 42-110a(3). Substantial litigation had resulted under the prior acts, to the effect that the CUTPA excluded businessmen or competitors CT Page 12557 as plaintiffs.
Robert M. Langer and David E. Ormstedt, "The Connecticut Unfair Trade Practices Act," 54 CONN. B.J. 388, 394-95 (1980). The Supreme Court's reference to this article supports the conclusion that the Court viewed the broadened Act as clarifying the rights of "businessmen [and] competitors," as well as consumers, to bring private remedy actions under Section 42-110g.
Further reason to view the holding in McLaughlin Ford as an exclusive listing of those who can bring private remedy actions under CUTPA can be found in later decisions of the Connecticut Supreme Court. In Larsen Chelsey Realty Co. v. Larsen, supra, in particular, the Court shed critical light on this issue when discussing whether an employer could properly sue its employee under CUTPA for attempting to divert its business to a competitor while still in the plaintiff's employ.
The trial court in Larsen Chelsea Realty had set aside a verdict for the plaintiff, reasoning in part that in the absence of a consumer relationship between the parties, no claim under CUTPA would lie. Relying in part on its decision in McLaughlinFord, the Court rejected that analysis as follows:
 We previously have stated in no uncertain terms that CUTPA imposes no requirement of a consumer relationship. In McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 473 A.2d 1185 (1984), we concluded that "CUTPA is not limited to conduct involving consumer injury" and that "a competitor or other business person can maintain a CUTPA cause of action without showing consumer injury." Id., 566, 567; see Della Construction, Inc. v. Lane Construction Co., 42 Conn. Sup. 202, 612 A.2d 147 (1991). Federal district courts interpreting Connecticut law also have reached this conclusion. See, e.g., Dial Corp. v. Manghnani Investment Corp., 659 F. Sup. 1230 (D. Conn. 1987)
 Even if we were to revisit this issue, however, we would reach the same conclusion that the application of CUTPA does not depend upon a consumer relationship. In making this determination we find it is relevant to consider the words of the statute, the legislative history and the legislative policy it was designed to implement. United Illuminating Co. v. Groppo, 220 Conn. 749, 756, 601 A.2d 1005 (1992). CT Page 12558
 First, there is no indication in the language of CUTPA to support the view that violations under the act can arise only from consumer relationships. Indeed, various provisions of CUTPA reveal that the opposite is true. CUTPA provides a private cause of action to "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice. . . ." General Statutes § 42-110g(a). "Person," in turn, is defined as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity. . . ." General Statutes § 42-110a(3). If the legislature had intended to restrict private actions under CUTPA only to consumers or to those parties engaged in a consumer relationship, it could have done so by limiting the scope of CUTPA causes of action or the definition of "person," such as by limiting the latter term to "any party to a consumer relationship." "The General Assembly has not seen fit to limit expressly the statute's coverage to instances involving consumer injury, and we decline to insert that limitation." McLaughlin Ford, Inc. v. Ford Motor Co., supra, 192 Conn. 566-67.
 Second, the legislative history of CUTPA reveals that, although consumers were expected to be a major beneficiary of its passage, the act was designed to provide protection to a much broader class. According to Representative Howard A. Newman, who reported the CUTPA legislation out of committee to the House of Representatives, the act "gives honest businessmen great protection [against] deceptive or unscrupulous [businessmen] who by unfair methods of competition and deceptive advertising, etc., unlawfully divert trade away from law abiding businessmen." 16 H.R. Proc., Pt. 14, 1973 Sess., p. 7323. Other supporters of the bill made similar comments. See, e.g., Conn. Joint Standing Committee Hearings, General Law, Pt. 2, 1973 Sess., p. 724, remarks of Stuart Dear, a member of the board of directors of the Connecticut Consumer Association (CUTPA will "assist the businessman in not losing out to those members of the business community who won't play fair"); Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1978 Sess., pp. 307-308, remarks of Assistant Attorney General Robert M. Langer (CUTPA covers transactions "between one business and another business"). CT Page 12559
 Finally, the legislature clearly announced its policy for interpreting CUTPA by directing us to the federal legislation upon which CUTPA is modeled. According to § 42-110b(b), courts construing the scope of CUTPA "shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)). . . . The federal courts have repeatedly and historically applied that act's provisions to situations not involving consumers. See, e.g., Yamaha Motor Co., Ltd. v. Federal Trade Commission, 657 F.2d 971 (8th Cir. 1981), cert. denied sub nom. Brunswick Corp. v. Federal Trade Commission, 456 U.S. 915, 102 S.Ct. 1768, 72 L.Ed.2d 174 (1982) (agreement between competitors not to compete); Sandura Co. v. Federal Trade Commission, 339 F.2d 847 (6th Cir. 1964) (same); American Tobacco Co. v. Federal Trade Commission, 9 F.2d 570 (2d Cir. 1925), aff'd, 274 U.S. 543, 47 S.Ct. 663, 71 L.Ed. 1193 (1927) (wholesaler's refusal to deal).
 Accordingly, the trial court was incorrect both in holding that a violation of CUTPA can only arise from a "consumer relationship" and in setting aside the jury verdict on that ground.
Larsen Chelsey Realty Co. v. Larsen, supra, 232 Conn. at 496-99.
Of special significance in the foregoing analysis is the Court's explicit linkage between a person's right to bring a CUTPA action and his status as an intended beneficiary of the Act's "protection." Plainly, the "protection" afforded by the Act to its intended beneficiaries was the personal right to pursue a private remedy action, and thus to invoke all the statutorily listed remedies on one's own behalf. Commercial competitors of those who use or employ unfair methods of competition, like consumers of unfair or deceptive traders, were thus to be protected from the ill effects of statutorily prohibited conduct by having the right to obtain actual damages for their resulting losses. In addition, having a special interest in preventing repetitions of prohibited conduct due to their continuing involvement in the market where the conduct occurred, they were to have the right to halt and deter such conduct by seeking equitable relief against and punitive damages from the defendant. Finally, to ensure that they could fearlessly pursue the above-described remedies without inviting financial ruin, and obtain CT Page 12560 the full measure of the relief to which they were entitled, net of costs and attorneys fees, they were to have the right, if successful, to seek their costs and attorneys fees from the defendant. Clearly, the true reason for affording a private right of action under CUTPA to competitors and other business persons who suffer ascertainable losses at the hands of unscrupulous competitors was not that they meet the broad definition of "person" set forth in Section 42-110a(3). Instead, it was that they, like consumers, fell within that special class of persons for whom "the act was designed to provide protection[.]" LarsenChelsey Realty Co. v. Larsen, supra, 232 Conn. at 497.
In the wake of the Supreme Court's decision in Larsen ChelseyRealty, several judges of this Court have ruled that in the absence of a commercial relationship between the plaintiff and the defendant, a private CUTPA claim under Section 42-110g will not lie. See, e.g., Connecticut Water Co. v. Town of Thomaston, 1996 WL 6774-58 at 7 (Conn.Super. Nov. 8, 1996) (Corradino, J.);Mantie v. Inn at Manchester, 18 CONN. L. RPTR. 438, 1997 WL 16845 (Conn.Super. Jan. 9, 1997) (Hammer, J.); Valle v. Andrews, 1996 WL 151828 (Conn.Super. March 8, 1996) (Hennessey, J.). Their reasoning is typified by that of Judge Corradino, who in discussing the scope of a private remedy action under CUTPA, wrote that the Act was designed to
 protect two classes or deal with two sets of problems. First, there is the protection of consumers from unfair or deceptive acts or practices. Then there is a concern with ensuring fair competition and in order to accomplish that end, competitors and other business people can bring a CUTPA action. But at the very least, other business people, who are not direct competitors, must have some type of commercial relationship with the alleged wrongdoer — commercial relationship not being so much a business relationship but some kind of relationship in the marketplace so that the particular acts of wrongdoing alleged will interfere with fair and open competition in that particular marketplace.
Connecticut Water Co. v. Town of Thomaston, supra, 1996 WL 677458 at 7. (Emphasis added.) For the reasons previously indicated, the CT Page 12561 Court finds this reasoning persuasive.
Here, then, as in the area of antitrust enforcement, broad statutory language appearing to grant a private right of action to anyone harmed by statutorily prohibited conduct must be construed more narrowly, in light of the statute's true purposes, to limit that right to those who suffer injuries of the type the law was designed to prevent and remedy. See generally, BrunswickCorp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477 (1977). Therefore, unless the plaintiffs allege that they suffered their alleged losses in the course and as a result of some commercial relationship with the defendants, their CUTPA claim must be stricken for failure to state a legally sufficient cause of action.
 III
The plaintiffs concede that they are not consumers of the defendants' goods or services, competitors of the defendants' landfill business or other business persons who interact with them in the waste management market. Even so, they claim to have developed a commercial relationship with the defendants by becoming "involuntary investors" in their landfill business.
The defendants have failed, claim the plaintiffs, to spend sufficient money and energy on their landfill to control the spread of noxious odors, gases and other substances therefrom into the plaintiffs' surrounding neighborhood, to control the influx of birds, vermin, rodents and other pests to the landfill, to control noises emanating from the landfill, and to regulate and control the flow of traffic to and from the landfill. Having so operated the landfill as to maximize their own profits, all to the great financial detriment of the plaintiffs, the defendants are claimed to have shifted a substantial portion of the cost of operating the landfill to the plaintiffs without their consent.
This argument, though surely ingenious, is completely without merit. If it were otherwise, any person who ever suffered any kind of loss or injury as a result of prohibited conduct by a business person could claim to be that business person's "involuntary investor," supporting the tortfeasor's business financially by involuntarily bearing costs which the tortfeasor should bear. Though CUTPA was designed to provide broad protection to those of its intended beneficiaries who were directly harmed by unfair competition or unfair or deceptive CT Page 12562 trade practices, it was surely not intended to turn every tort by a business person into a CUTPA claim.
The plaintiffs' argument that they have a commercial relationship with these defendants must therefore be rejected. Accordingly, the fifth count of the plaintiffs' revised amended complaint must be stricken.[2]
 CONCLUSION
For all of the foregoing reasons set forth in Parts II and III of this Memorandum of Decision, the Court hereby grants the defendants' motion to strike the fifth count of the plaintiffs' revised amended complaint. However, for the reasons stated in note 1 of this Memorandum of Decision, supra at page 2, the Court hereby denies the defendants' motion to strike the third count of said revised amended complaint, without prejudice to their later right to request that it be merged with one or more other pending counts when the case is presented to the jury.
So ordered this 6th day of November, 1998.
MICHAEL R. SHELDON, J.