[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (DOCKET ENTRY NO. 106)
In his two-count amended complaint, the plaintiff, Thomas Kruger, alleges that the defendants, Group 1 Capital, Ltd. and its president William Lynch, acted wilfully and wantonly (count one) and violated the Connecticut Unfair Trade Practices Act (CUTPA) (count two). Specifically, the plaintiff alleges that, while performing his janitorial duties at the defendants' office building at 80 Ferry Road in Stratford, he entered the building's electrical room to get paper towels. The electrical room was a long, narrow room containing all the building's electrical circuits. The plaintiff propped open the door to the electrical room with a shopping cart to let light in, but the wind blew the door shut and he was left in total darkness. The plaintiff had warned the defendants before that the lack of illumination in the electrical room was dangerous, but for approximately four years the defendants had failed to provide lighting therein. As a result of the darkness, the plaintiff knocked a scale off a shelf and suffered one or more fractures in his foot.
The defendants move to strike count one on the ground that the plaintiff failed to state a claim for wilful and wanton conduct. The defendants move to strike count-two on the grounds that the plaintiff is not "in a consumer and/or competitive relationship with the defendants" and that the alleged negligent conduct is insufficient to meet the second prong of the "cigarette rule" under CUTPA. The defendants and the plaintiff have filed memoranda.
The defendants argue that the plaintiff has failed to allege facts sufficient to support a claim of wanton or wilful conduct. In this regard the defendant argues that:
 "In order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts. [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable CT Page 12445 degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) Elliott v. Waterbury, 245 Conn. 385, 415, 715 A.2d 27 (1998).
The defendant then points out that no such state of consciousness was alleged. This court disagrees.
Superior Court decisions have held that allegations similar to the allegations in the plaintiff's complaint give rise to claims in recklessness. See Cardenas v. Mixcus, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 158984 (February 26, 1998, Mintz, J.) (21 Conn. L. Rptr. 403) (plaintiff alleged that the defendant intentionally left unsecured steps unguarded and failed to post a warning); Neudeckv. Stewart, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 335425 (October 1, 1998, Melville, J.) (plaintiff alleged that the defendant knew a pool slide was dangerous in shallow pools, but sold the slide without warning of depth requirements); Walls v. OP F Schroder Trust, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 164524 (October 14, 1998, Mintz, J.) (plaintiff alleged that defendant removed safety devices from garage door and failed to replace them); Zitzer v. Officemax, Inc., Superior Court, judicial district of Milford, Docket No. 55240 (April 28, 1997,Corradino, J.) (19 Conn. L. Rptr. 413) (plaintiff alleged that the defendant store maintained a dangerous floor condition with knowledge that it could result in severe consequences)
Further, the plaintiff alleges that he repeatedly warned the defendants in the past of the dangerous unlit condition of the electrical room, but that the defendants refused to provide illumination over the course of approximately four years. These allegations amount to more than mere negligence because, as alleged, the defendants knew of the dangerous condition and refused to alter it over an extended period. Such conduct is what transfers mere negligent acts or omissions into reckless conduct. That is, in the present case, the continued failure to rectify a CT Page 12446 dangerous condition in the face of repeated warnings thereof is sufficient to support a claim of reckless conduct. See Riordan v.Govin, 119 Conn. 235, 238 (1934). These facts are also sufficient to support an inference that the defendants realized that there was "a strong probability that harm may result." Suarez v.Dickmont Plastics Corp., supra, 229 Conn. 123; Riordan v. Govin,
supra, 119 Conn. 235, 238. Moreover, the plaintiff's failure to provide lighting in a room where equipment, supplies and all the building's circuits were located evidences "an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." Elliott v. Waterbury, supra, 245 Conn. 415. "[A]t the very least, [the defendants] exhibited a reckless disregard of the [plaintiff's] rights." Tessmann v. Tiger Lee ConstructionCo., 228 Conn. 42, 54, 634 A.2d 870 (1993). Accordingly, defendants' motion to strike the first count of the plaintiff's complaint ought to be and is hereby DENIED.
As to the second count, the defendants argue that the plaintiff cannot maintain his CUTPA claim because the plaintiff has not alleged that he is a consumer, nor has he alleged a business relationship with the defendants. In response, the plaintiff argues that CUTPA applies in this case because the plaintiff was a provider of services to the defendants in the operation of their business.
CUTPA imposes no requirement of a consumer relationship. A competitor or other business person can maintain a CUTPA cause of action without showing consumer injury. Larsen Chelsey Realty Co.v. Larsen, 232 Conn. 480, 496, 656 A.2d 1009 (1995). CUTPA was designed to protect two classes or deal with two sets of problems. First, there is the protection of consumers from unfair or deceptive acts or practices. Then there is a concern with ensuring fair competition and in order to accomplish that end, competitors and other business people can bring a CUTPA action.
 But at the very least, other business people, who are not direct competitors, must have some type of commercial relationship with the alleged wrongdoer commercial relationship not being so much a business relationship but some kind of relationship in the marketplace so that the particular acts of wrongdoing alleged will interfere with fair and open competition in that particular marketplace." (Emphasis in original; internal quotation marks omitted.) Marr v. WNX Technologies, Inc., Superior Court, judicial CT Page 12447 district of Litchfield at Litchfield, Docket No. 71542 (November 6, 1998, Sheldon, J.) (23 Conn. L. Rptr. 220, 224), aff'd on other grounds, 244 Conn. 676, 711 A.2d 700 (1998).
Defendant cites the case of Simms v. Candella to illustrate the requirement that there be some effect upon the marketplace by the wrongdoer's action. That case involved a tenant's slip and fall on ice that accumulated on a stairway due to the lack of a gutter. The Superior Court there held that the condition of the premises
 ". . . implicates the entrepreneurial aspect of the landlord's business. Renting an apartment building without adequate gutters may be financially advantageous to the landlord and increase his margin of profit. Conforming to the requirements of the Landlord and Tenant Act costs money. Public policy nevertheless requires landlord[s] to expend such money. When they do not, CUTPA is properly invoked." Simms v. Candela, 45 Conn. Sup. 267, 273, 711 A.2d 778 (1998).
In the present case the plaintiff alleges that the defendants were in the business of renting real property. However, the property in question, Eighty Ferry Boulevard, was not a rental property. Rather, it was the locus of the defendants' rental office. Further, the plaintiff is not a tenant, but is instead the building janitor for the subject property. Therefore, the plaintiff and the defendant do not share the same type of commercial relationship that existed between the parties inSimms. Here, the plaintiff does not pay rent in exchange for occupancy, rather the defendant pays the plaintiff in exchange for the plaintiff's janitorial services. Thus, although the defendants may, indeed, increase their profits by decreasing the cost of lighting, the plaintiff has failed to allege the necessary relationship between the defendants' cost savings and the market for custodial services.[1]
Furthermore, the building codes and statutes to which the plaintiff refers do not evidence a commercial relationship as does the Landlord and Tenant Act, which was at issue in Simms v.Candela, supra, 45 Conn. Sup. 267. See General Statutes §§47a-1 to 47a-74 (Landlord and Tenant Act); General Statutes §§19a-109 and 29-253; Regs., Conn. State Agencies, § 29-252-1b; BOCA National Building Code/1990, § 104.2; see also BOCA CT Page 12448 National Building Code/1990, § 703.1. The plaintiff has, therefore, failed to allege a commercial relationship with the defendants that exposes the defendants to liability under CUTPA.[2]
Accordingly, the defendants' motion to strike the second count ought to be and is hereby GRANTED.
In summary, for the reasons herein expressed, the motion to strike the first count is DENIED; the motion to strike the second count is GRANTED.
MELVILLE, J.