[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision re Hearing in Damages
The plaintiff brings this action in three counts claiming that the defendants were the owners of certain premises on Main Street in Willimantic and that the defendant occupied an apartment on the second floor of said premises. The defendant maintains that on November 9, 1999, she was in her apartment when a piece of ceiling fell upon her causing her injuries. The plaintiff claims negligence, violation of the Landlord and Tenant Act and violation of the Connecticut Unfair Trade Practices Act.
The named defendant Anthony Defilippo has apparently died. The remaining defendant Nancy Defilippo has been defaulted and was not in attendance. The action proceeded as an uncontested hearing in damages. The only witness was the plaintiff whose principal testimony focused on the claimed loss of function and limitations in life's enjoyment occasioned by the falling piece of ceiling. While the plaintiff did testify that the landlords had been told of water leaking through the ceiling and other problems, she made no effort to establish the circumstances, time and nature of the complaints. She offered no testimony on her fulfilling her obligations and responsibilities as a tenant as required by C.G.S. 47a-11.
In Simms v. Candela, 45 Conn. Sup. 267, 711 A.2d 778 (1998),21 Conn.L.Rptr. 479, the court denied a motion to strike on the ground that a tenant may plead a violation of CUTPA for personal injuries sustained as a result of the landlord's negligence. The violation complained of inSimms, was "the absence of a gutter in an apartment house resulting in a dangerous condition. While this may indeed be an act of negligence (and a violation of the Landlord and Tenant Act), it also implicates the entrepreneurial aspect of the landlord's business. Renting an apartment building without adequate gutters may be financially advantageous to the landlord and increase his (or her) margin of profit. Conforming to the requirements of the Landlord and Tenant Act costs money. Public policy CT Page 4244 nevertheless requires landlords to expend such money. When they do not, CUTPA is properly invoked." Id., 273.
The Simms court further explained that this, "does not mean that every slip and fall by a tenant can be turned into a CUTPA violation. If a landlord negligently drops a banana peel on the steps and a tenant falls as a result, the landlord may well be liable in negligence, but there would be no CUTPA violation. The failure to make a structural repair required by the state habitability statutes is, however, different. (Citations omitted.) Id. For example, "although unskillful surgery cannot form the basis of a CUTPA violation, medical malpractice based on the adequacy of staffing, training, equipment or support personnel can still result in a legally sufficient CUTPA claim. In that case, the person sued has enhanced his economic condition by failing to make the expenditures that public policy demands." Id.
Here the meager evidence that the defendant was unable or failed to make the repairs and subsequently lost the property by condemnation and foreclosure may have been the result of economic hardship, tenants failing to pay their rent or other unknown hardship. The burden is on the plaintiff to establish the fault and she has failed to demonstrate by a fair preponderance of the evidence a CUTPA violation. See also CalebVillage Heights Foundation v. Barclay, Superior Court, judicial district of Windham at Putnam, Docket No. CV 063265 (January 8, 2001, Foley, J.).
The evidence presented does establish negligence on the part of the landlord. A determination of fair, just and reasonable damages is complicated by the medical records which establish many pre-existing disabilities and conditions. The plaintiff who was 30 years of age at the time of the injuries, was already on Social Security disability for discogenic disease. She had a history of back pain, carpal tunnel and ganglion cyst surgeries, neck and right arm pain preceding the injury and suffered from migraine headaches. One of her attending physicians noted the "severe psychogenic component to her complaints." Her diagnosis for this injury at the hospital on November 9, 1999 was "neck strain."
The medical records show no correlation between her injury and her continued complaints of lower back and leg pain. Neither do the medical bills submitted distinguish between her treatment for alleged neck injuries and the unrelated therapy for lower back and leg pain. There are no medical reports or bills over the past two years.
Based upon the foregoing, the court awards the plaintiff $2,534.20 for medical bills and $2,500 for any pain or suffering associated with the neck strain. CT Page 4245
Judgment may enter accordingly.
Foley, J. CT Page 4246