JAMES SUAREZ *v.* ALEXANDER J. SORDO ET AL.
(14840)

Dupont, C. J., and Landau and Schaller, Js.

Argued September 26—officially released December 17, 1996

*Michael J. Walsh*, for the appellants (defendants).

*Dale P. Faulkner*, with whom, on the brief, was *Lucia M. Mercurio*, for the appellee (plaintiff).

LANDAU, J. The defendants, Alexander J. Sordo and Fred Argilagos, appeal from the judgment rendered in favor of the plaintiff, James Suarez, after a jury trial. The jury found for the plaintiff on count one, sounding in negligence, and awarded damages in the amount of $94,000. It also found for the plaintiff on count two under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and the trial court awarded attorney's fees. On appeal, the defendants claim that the trial court improperly (1) denied their motion for a directed verdict, their motions to set aside the verdict and their motion for judgment notwithstanding the verdict, each addressed to the plaintiff's negligence claim, and (2) denied their motion to set aside the verdict as to the plaintiff's CUTPA claim.[1] We agree and reverse the judgment of the trial court.

---

[1] The defendants also claim that the trial court improperly failed to charge the jury on the doctrine of superseding cause. Because we agree with the defendants that the trial court improperly denied the motion for a directed verdict, the motion to set aside the verdict, and the motion for judgment notwithstanding the verdict on the plaintiff's negligence claim, the defendants' failure to charge claim is moot and, thus, will not be addressed. *State* v. *Smith*, 207 Conn. 152, 178, 540 A.2d 679 (1988).

The defendants finally claim that the trial court improperly permitted the jury to consider the CUTPA claim and that the jury charge given was

The jury could reasonably have found the following facts. On July 30, 1991, the plaintiff, a policeman employed by the city of New London, and a fellow officer saw Gary Jones, for whom they had an outstanding warrant, at 37-39 Tilley Street outside a building owned by the defendants. Jones was a guest of the defendants' first floor tenant, whom he had visited on several occasions. Upon seeing the plaintiff, Jones ran into the defendants' building through the back door, which was without a lock, and the plaintiff pursued him. At that time, the plaintiff was aware that the warrant for Jones was based on a weapons charge. The plaintiff chased Jones into a vacant third floor apartment. The door to that apartment was without a doorknob or a lock. Jones came out of the apartment shooting his gun, wounding the plaintiff in the wrist and leg.

## I

The defendants first claim that the trial court improperly denied their motion for a directed verdict, their motions to set aside the verdict, and their motion for judgment notwithstanding the verdict, each addressed to the plaintiff's negligence claim. The defendants argue that, as a matter of law, their conduct was not a proximate cause of the plaintiff's injury. They assert that their alleged negligence, namely, the housing code violations, had no relation to the subsequent shooting of the plaintiff and that *Doe* v. *Manheimer*, 212 Conn. 748, 563 A.2d 699 (1989), precludes recovery. We agree.[2]

improper. Because our determination on the issue of proximate cause is dispositive on the CUTPA issue, we need not reach these claims.

[2] In his brief, the plaintiff argues that because the defendants failed to file a timely motion to set aside the verdict, the defendants' claims should be limited to plain error review. See *Saporoso* v. *Aetna Life & Casualty Co.*, 221 Conn. 356, 363, 603 A.2d 1160 (1992). At oral argument, however, all parties conceded that the limited review is no longer the rule of law because in *Santopietro* v. *New Haven*, 239 Conn. 207, 211–21, 682 A.2d 106 (1996), the Supreme Court concluded that properly preserved claims of error need not be presented a second time in a motion to set aside the verdict to be afforded plenary review on appeal.

Our standard of review for motions to direct a verdict, motions to set aside a verdict and motions for judgment notwithstanding the verdict are the same. See *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 724, 682 A.2d 1026 (1996), citing *Fleming* v. *Garnett*, 231 Conn. 77, 83, 646 A.2d 1308 (1994); see also *Green* v. *DiFazio*, 148 Conn. 419, 420, 171 A.2d 411 (1961).

"Directed verdicts are not favored. *Puro* v. *Henry*, 188 Conn. 301, 303, 449 A.2d 176 (1982). *Petyan* v. *Ellis*, 200 Conn. 243, 244, 510 A.2d 1337 (1986). Consequently, [o]ur review of a trial court's refusal to direct a verdict or to render a judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion. . . . *John T. Brady & Co.* v. *Stamford*, 220 Conn. 432, 440–41, 599 A.2d 370 (1991); *Iseli Co.* v. *Connecticut Light & Power Co.*, 211 Conn. 133, 140, 558 A.2d 966 (1989)." (Internal quotation marks omitted.) *Fleming* v. *Garnett*, supra, 231 Conn. 83. Thus, a trial court may set aside a verdict on a finding that the verdict is manifestly unjust because the jury, on the basis of the evidence presented, mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case can be applied. *Maroun* v. *Tarro*, 35 Conn. App. 391, 396, 646 A.2d 251, cert. denied, 231 Conn. 926, 648 A.2d 164 (1994).

"Before determining whether the granting of a motion to set aside is proper, the trial court must look at the relevant law that it gave the jury to apply to the facts, and at the facts that the jury could have found based

on the evidence. The law and evidence necessarily define the scope of the trial court's legal discretion. See *Gesualdi* v. *Connecticut Co.*, 131 Conn. 622, 627, 41 A.2d 771 (1945). This discretion vested in the trial court is not an arbitrary or capricious discretion, but, rather, it is legal discretion to be exercised within the boundaries of settled law. Id. This limitation on a trial court's discretion results from the constitutional right of litigants to have issues of fact determined by a jury. *Young* v. *Data Switch Corp.*, 231 Conn. 95, 101, 646 A.2d 852 (1994); *Seals* v. *Hickey*, 186 Conn. 337, 350, 441 A.2d 604 (1982). This right is an obviously immovable limitation on the legal discretion of the court to set aside a verdict. . . . *Young* v. *Data Switch Corp.*, supra, 101. The trial court, upon a motion to set aside the verdict, is called on to question whether there is a legal reason for the verdict and, if there is not, the court must set aside the verdict.

"While an appellate court must give great weight to a trial court's decision to set aside a verdict, an appellate court must carefully review the jury's determinations and evidence, given the constitutional right of litigants to have the issues decided by a jury. Great weight should be given to the action of the trial court and the presumption is that a verdict is set aside only for good and sufficient reason. However, the record must support that presumption and indicate that the verdict demonstrates more than poor judgment on the part of the jury. *Marin* v. *Silva*, [156 Conn. 321, 323, 240 A.2d 909 (1968)]; *Burns* v. *Metropolitan Distributors*, 130 Conn. 226, 228, 33 A.2d 131 [1943]. While we do not attempt to substitute our judgment for that of the trial judge, we must determine whether the jury award was such that the trial judge could have properly substituted his judgment for that of the jury. *Jerz* v. *Humphrey*, 160 Conn. 219, 225, 276 A.2d 884 (1971). An appellate court,

therefore, in reviewing whether a trial court abused its legal discretion, must review the entire record and [all] the evidence." (Internal quotation marks omitted.) *Foley* v. *Huntington Co.*, supra, 42 Conn. App. 725–26.

Because the proximate cause claim is dispositive as to the negligence count, we turn to that issue first. The plaintiff claims that the defendants were aware of the criminal activity on their premises and that there were housing code violations throughout the premises, including a failure to maintain exterior doors in good condition. The plaintiff further claims that the defendants failed to lock and secure doors of their building even though they knew it was frequented by trespassers and others with criminal records.[3] The plaintiff posits that the defendants' knowledge of the violations and their knowledge of the violence occurring on their property placed Jones' conduct within the foreseeable risk and, therefore, their negligence was the proximate cause of plaintiff's injuries. The plaintiff argues that the facts of this case are distinguishable from those of *Doe* v. *Manheimer*, supra, 212 Conn. 748, and more analogous to those of *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 662 A.2d 753 (1995).

We begin by addressing the principles of legal causation. "Legal cause is a hybrid construct, the result of balancing philosophic, pragmatic and moral approaches to causation." *Kowal* v. *Hofher*, 181 Conn. 355, 359, 436 A.2d 1 (1980). The first component is "[c]ause in fact, occasionally referred to as actual cause, [that] asks whether the defendant's conduct 'caused' the plaintiff's injury. Thus, if the plaintiff's injury would not have occurred 'but for' the defendant's conduct, then the defendant's conduct is a cause in fact of the plaintiff's injury. Conversely, if the plaintiff's injury would have occurred regardless of the defendant's con-

---

[3] The plaintiffs further allege that such conduct was in violation of CUTPA.

duct, then the defendant's conduct was not a cause in fact of the plaintiff's injury." W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 41, p. 266.

The second component is proximate cause. "Proximate cause establishes a reasonable connection between an act or omission of a defendant and the harm suffered by a plaintiff." Id., § 41, p. 263. Proximate cause serves to temper the " 'expansive view of causation [in fact] . . . by the pragmatic . . . shaping [of] rules which are feasible to administer, and yield a workable degree of certainty.' " *Doe* v. *Manheimer*, supra, 212 Conn. 757–58. "In other words, legal cause can be portrayed pictorially as a Venn diagram, with the circle representing cause in fact completely subsuming the smaller circle representing proximate cause, which specifically focuses on that which we define as legal causation." *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 606. The Connecticut Supreme Court has defined proximate cause as "[a]n actual cause that is a substantial factor in the resulting harm . . . ." Id.; *Mahoney* v. *Beatman*, 110 Conn. 184, 195, 147 A. 762 (1929). The "substantial factor" test reflects the inquiry fundamental to all proximate cause questions, that is, "whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." (Internal quotation marks omitted.) *Doe* v. *Manheimer*, supra, 758; see *Palsgraf* v. *Long Island R.R. Co.*, 248 N.Y. 339, 354, 162 N.E. 99 (1928).

In analyzing issues of proximate cause, we note that an intervening intentional or criminal act relieves a negligent defendant of liability, except where the harm caused by the intervening act is within the "scope of risk" created by the defendant's conduct or where the intervening act is reasonably foreseeable. See *Tetro* v. *Stratford*, 189 Conn. 601, 605, 458 A.2d 5 (1983); *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 382–84, 441 A.2d

620 (1982). As a general rule, the act of a third person in committing an intentional act or crime is a superseding cause of harm to another resulting therefrom. *D'Arcy* v. *Shugrue*, 5 Conn. App. 12, 24–25, 496 A.2d 967, cert. dismissed, 197 Conn. 812, 499 A.2d 56, cert. denied, 197 Conn. 817, 500 A.2d 1336 (1985). In such a case, "the third person has deliberately assumed control of the situation, and all responsibility for the consequences of his act is shifted to him." 2 Restatement (Second), Torts § 442B, comment (c) (1965); *Burns* v. *Gleason Plant Security, Inc.*, 10 Conn. App. 480, 485, 523 A.2d 940 (1987).

We have adopted, as an exception to the general rule, the standard set forth in § 442B of the Restatement (Second) of Torts, that " '[w]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.' " *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 607–608; *Doe* v. *Manheimer*, supra, 212 Conn. 759.

Because the parties rely on *Doe* and *Stewart* as the foundation of their arguments, we review the facts and conclusions in those cases.

In *Doe*, the plaintiff worked as a meter reader for the Connecticut Light and Power Company. As she was walking along Green Street in the city of New London, she approached a man who appeared to be lost. He reached into his bag, took out a gun and, holding it against her, forced her from the sidewalk through a paved lot that abutted the street. He then pushed her onto an adjacent property owned by the defendant, fifty to seventy feet from the sidewalk, bounded by the

defendant's building on one side and a retaining wall in the rear. On the other side of the property, overgrown sumac bushes and tall grass shielded the area from view from the sidewalk and street. The man then assaulted and raped the plaintiff for thirty minutes. In a suit brought against the owner of the property, the plaintiff claimed that the defendant failed to remove the overgrown vegetation although he knew, or should have known, that because the neighborhood was a high crime area, third persons might use the overgrowth to conceal the perpetration of crimes against pedestrians. She asserted that, but for the overgrowth of vegetation, the area would have been visible to passing motorists and pedestrians and, consequently, the overgrowth caused and contributed to the assault and its duration.

Several witnesses also testified that another rape had occurred in a neighborhood building three months prior to this rape; that some fourteen months prior to the incident, the defendant's ninety year old mother was bound, gagged and robbed in the package store located at the front of the building on the defendant's property; that prostitution and drug dealing were more prevalent in that area than in other sections of the city; and that street people slept in the area and police frequently removed intoxicated persons from the area. Testimony was offered that the site of the assault violated the housing code because of the presence of the overgrowth of sumac trees and brush, together with discarded liquor bottles and other debris. The city sent the defendant notices of the violations, but the violations went uncorrected. Following a general verdict for the plaintiff, the trial court granted the defendant's motion to set aside the verdict on the ground that the plaintiff had not established proximate cause as a matter of law. On appeal, the Supreme Court held that the trial court had properly concluded, as a matter of law, that the jury could not find that the defendant's failure to remove

the overgrowth was a substantial factor in producing the plaintiff's injuries and that the plaintiff had, thus, failed to establish proximate cause.

The *Doe* court found that the § 442B exception did not apply to the defendant landowner because "[a] prudent person who owns land abutting a public way would not . . . infer from his ordinary experience the possibility that overgrown vegetation [would] prompt or catalyze a violent criminal act." *Doe* v. *Manheimer*, supra, 212 Conn. 762. The court also found persuasive that, while the defendant may have been aware of nonviolent activity on his property, such as vagrancy and public consumption of alcohol, there was no evidence of prior crimes of violence.

In *Stewart*, the plaintiff's decedent was shopping in the defendant's department store. After shopping, she returned to her car, which was parked on the ground floor of the store's garage. While she was placing packages in her trunk, a stranger, approached her intending to rob her. When she resisted, the robber repeatedly stabbed her, took her purse, packages and watch, and left her to die on the garage floor.

No security guard was on duty at the garage. The lighting was dim, with 300 inoperative fluorescent light fixtures. There were no gates at the entrances, nor was the garage fully fenced or enclosed at ground level. The store and garage were located in a high crime area. Violence in the area ranged from larceny and robbery to rape and murder. There had been over 1000 serious crimes reported within a two block radius of the garage, as well as numerous knifepoint robberies, larcenies from parked cars, theft and vandalism.

The defendant's employees repeatedly requested that management increase the security in the garage. The defendant, however, took no steps to provide additional security. The defendant was informed of remedial steps

necessary to correct the security problem in the garage, but management rejected its security manager's recommendation to hire an additional guard and to enclose the garage with fencing.

During its deliberations, the jury answered four interrogatories. It found the defendant negligent because it failed to provide the requisite level of security in its garage; the defendant's negligence was a substantial factor in causing harm to the plaintiff's decedent; the defendant's failure to use reasonable care in guarding the safety of its patrons within its garage created or increased the likelihood of injury to a customer as a result of a criminal act within the garage; and the harm caused was within the scope of the risk created by the defendant's negligence. After judgment was rendered on the verdict, the defendant appealed, challenging various instructions given by the trial court and challenging the denial of its motion for a directed verdict filed on the ground that the robber's actions were not within the scope of risk foreseeable to it, i.e., the decedent's death was not reasonably foreseeable because there were no prior incidents of murder within the garage. On this claim, the Supreme Court agreed with the trial court and concluded that a jury could reasonably have found, by a preponderance of the evidence, that the harm that befell the plaintiff's decedent had been reasonably foreseeable and within the scope of the risk created by the defendant's negligence.

The *Stewart* court found the facts strikingly different from those presented in *Doe*. That court concluded that "the jury reasonably could have found that the particular harm involved, [the plaintiff's decedent's] robbery and murder, had been within the foreseeable scope of the risk because the prior robberies that occurred in the garage were crimes with a natural propensity to escalate into physical violence, including murder. . . . [G]iven the criminal statistics that were available to

the defendant, and the recommendations of its own security supervisor and other employees, and the past violent crimes that had occurred within the garage and its immediate vicinity, the jury reasonably could have found that the defendant had been aware or should have been aware of the dangers of larceny, robbery, rape, felony murder and other similar crimes that are prevalent in shadowy, isolated places, such as the dim parking garage in question." *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 613. The *Stewart* court also concluded that the intervention of the felon had been within the foreseeable scope of the risk created by the defendant's negligent conduct. Id. "[T]he constant presence of individuals, encumbered with their purchases, returning to their vehicles in a parking structure that was not enclosed and that was either unguarded or insufficiently guarded, served as an invitation to criminals, an invitation that had been accepted on several previous occasions." Id.

We conclude that the present case is more analogous to *Doe* than to *Stewart*.

We note that although the question of the existence of proximate cause is essentially a question of fact to be decided by the trier of fact; see *Doe* v. *Manheimer*, supra, 212 Conn. 756; "it becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion . . . ." *Trzcinski* v. *Richey*, 190 Conn. 285, 295, 460 A.2d 1269 (1983). Even if we assume, arguendo, that a duty existed that was breached, unless Jones' entering the building and hiding in the third floor apartment where the locks and knobs were missing was reasonably foreseeable or unless the injury suffered by the plaintiff as a result of the shooting was within the scope of risk of the defendants' conduct in the maintenance of the building, there was a lack of proximate cause and the action must fail.

In their argument as to foreseeability, the defendants concede that if they were negligent and their negligence created the risk of a particular harm and was a substantial factor in causing that harm, the fact that the harm was brought about through the intervention of another force does not necessarily relieve them from liability. They hasten to point out, however, the general rule that where the harm is intentionally caused by a third person and is not within the scope of risk created by the actor's conduct, the actor is not liable. See 2 Restatement (Second), supra, § 442B.

The first question to be resolved is whether the criminal conduct of Jones was a reasonably foreseeable consequence of the defendants' negligence. We conclude that the intervention of Jones was not foreseeable as a matter of law and, therefore, we reverse the jury's determination.

Some additional facts are necessary. The building, containing thirteen apartments, had been subject to four inspections by the housing department between May, 1990, and June, 1991. These inspections revealed, inter alia, exterior doors without doorknobs and locks in violation of the city housing code.[4] An abatement order regarding an inspection on June 7, 1990, was sent to the defendant Argilagos on June 21, 1990. An abatement order dated November 2, 1990, was sent to both defendants regarding an inspection on October 19, 1990, containing eighty-four violations of the housing code. An inspection on June 3 and June 4, 1991, resulted in another abatement order. One of the violations found was that the rear door to one apartment needed repair. The conditions were never remedied.

The defendants knew that the building was in a high crime area that it was frequented by vandals and drug

---

[4] Section 423.4 of the New London housing code provides: "Every exterior door, door hinge, and door latch shall be maintained in good condition."

dealers, and that the police came to the property in pursuit of or to investigate persons suspected of criminal activity. Between June, 1990, and August, 1991, the police responded to seventy-six calls concerning the property.[5] Two days before the incident at issue in this case, Argilagos made a complaint to the police regarding unwanted people in the vacant third floor apartment where the shooting took place.

While the recent history of the property and the conduct of the defendants is cause for concern, the fact that the shooting occurred in the defendants' building is, at most, incidental. If the felon had not run into the building, he could just as easily have shot the plaintiff wherever the felon was cornered. The absence of locks and knobs on the building's doors may be said to be a cause in fact, sometimes referred to as an actual cause. Therefore, the defendant's conduct may have "caused" the plaintiff's injury. See *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 605, citing W. Prosser & W. Keeton, supra, § 41. "Philosophically, cause in fact is limitless; 'but for' the creation of this world, no crime or injury would ever have occurred. . . . Lines must be drawn determining how far down the causal continuum individuals will be held liable for the consequences of their actions." (Citations omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 605–606, citing W. Prosser & W. Keeton, supra, § 42. This line is labeled "proximate cause." *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 605–606.

By allowing apartments in their building to be without locks in a high crime area, the defendants may well have foreseen that a felon might enter and steal items. It was not foreseeable, however, that a felon, walking

---

[5] Criminal activity included threats, burglary, suspicious persons, assaults, fights, narcotics, trespassing, disturbances, domestic violence, and one dead body.

on Tilley Street, would be confronted by a policeman having in his possession a warrant for the felon's arrest that indicated that the felon was armed, and that, upon seeing the policeman, the felon would run through the unlocked rear door of a building to which he had been invited by a tenant, run up to the vacant third floor apartment and obtain access to the apartment to conceal himself, all because the building had no locks on the door. Further, it was not foreseeable that the policeman would pursue the felon to that apartment and that the felon would shoot the policeman. "To hold otherwise would be to convert the imperfect vision of reasonable foreseeability into the perfect vision of hindsight." *Burns* v. *Gleason Plant Security, Inc.*, supra, 10 Conn. App. 486.

Even if we assume, arguendo, that the incident was reasonably foreseeable, the plaintiff must still show by a fair preponderance of the evidence that harm intentionally caused by a third person is within the scope of the risk created by the defendant's negligent conduct. *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 607. Here, the defendants' negligent conduct is the failure to install locks and knobs on the doors of their building. The question to be answered is whether the plaintiff's injury, which was caused by the third party felon, was within the scope of risk created by the absence of the locks and knobs on the doors.

The plaintiff asserts that the evidence demonstrates that the harm caused by the intervening act is within the scope of risk of the defendants' conduct and, therefore, satisfies the § 442B exception to the general rule. He argues that the evidence shows continuous criminal activity on the premises, including violent activity such as assaults and burglaries. "Our cases make it clear that, to be within the 'scope of the risk,' the harm actually suffered must be of the *same* 'general type' as that which makes the defendant's conduct negligent in the

first instance." (Emphasis added.) *Doe* v. *Manheimer*, supra, 212 Conn. 764. It is the general nature of the crime that defines the breadth of the scope of the risk. *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 611.

The evidence presented at trial demonstrated that the tenants in the building left the doors open despite the fact that locks were installed on some doors. Jones was an invited guest of a tenant and, thus, was granted permission by the tenant to enter the premises. We cannot ignore the fact that "[v]iolent crimes are actuated by a host of social and psychological factors. Although, as a matter of fact, it may be true that one of those actuating factors is mere opportunity for concealment, common experience informs us that such a factor is at most incidental." *Doe* v. *Manheimer*, supra, 212 Conn. 762.

The jury could not reasonably conclude from the evidence presented that the defendants' allegedly negligent conduct, i.e., the absence of locks and knobs on the third floor apartment door, created a risk of the type of harm actually suffered by the plaintiff. Therefore, the plaintiff has failed to establish the necessary causal relationship. See id., 764.

## II

The defendants next claim that the trial court improperly denied their motion to set aside the verdict as to the plaintiff's CUTPA claim. The defendants argue that as a matter of law the plaintiff failed to establish an unfair trade practice under CUTPA and failed to establish a sufficient relationship between the plaintiff and the defendants to support a CUTPA claim.

"In determining whether a verdict should be set aside, the court is obligated first to review the evidence giving it a construction most favorable to sustaining the jury's

verdict. *Kalleher* v. *Orr*, 183 Conn. 125, 126–27, 438 A.2d 843 (1981). In addition, the trial court's refusal to disturb the jury's verdict is entitled to great weight, and every reasonable presumption should be given in favor of its correctness. *Waldron* v. *Raccio*, 166 Conn. 608, 618, 353 A.2d 770 (1974); *Shenefield* v. *Greenwich Hospital Assn.*, 10 Conn. App. 239, 247, 522 A.2d 829 (1987). In reviewing this issue, our sole responsibility is to decide whether, on the evidence presented, the jury could fairly reach the conclusion they did. *Wu* v. *Fairfield*, 204 Conn. 435, 440, 528 A.2d 364 (1987)." *Pagani* v. *BT II, Ltd. Partnership*, 24 Conn. App. 739, 747–48, 592 A.2d 397, cert. dismissed, 220 Conn. 902, 593 A.2d 968 (1991). " 'The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion.' " *John T. Brady & Co.* v. *Stamford*, supra, 220 Conn. 441; *Iseli Co.* v. *Connecticut Light & Power Co.*, supra, 211 Conn. 140.

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or business." General Statutes § 42-110b (a). "The policy behind CUTPA is to encourage litigants to act as private attorneys general and to bring actions for unfair or deceptive trade practices." *Hernandez* v. *Monterey Village Associates Ltd. Partnership*, 17 Conn. App. 421, 425, 553 A.2d 617 (1989). CUTPA, however, is limited to "[a]ny person who suffers any ascertainable loss of money or property, real or personal, *as a result of* the use or employment of a [prohibited] method, act or practice . . . ." (Emphasis added.) General Statutes § 42-110g (a). The plain language of § 42-110g (a) requires that the plaintiff suffer an ascertainable loss that was caused by the alleged unfair trade practice. *Haesche* v. *Kissner*, 229 Conn. 213, 223–24, 640 A.2d 89 (1994). In the present case, no CUTPA violation exists because, as we determined in part I, the plaintiff

failed to show that he suffered harm "as a result of" the alleged violation.[6] Therefore, the trial court improperly denied the defendants' motion to set aside the verdict as to the plaintiff's CUTPA claim.

The judgment is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.

---

[6] In view of this conclusion, it is unnecessary to determine whether the plaintiff is a "consumer" within the definition of CUTPA.