[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes before the Court upon a finding by the Claims Commissioner of the State of Connecticut granting the Plaintiff herein permission to sue the State of Connecticut.
The matter was tried to the Court (Carroll, J.) on March 23 and 24, 2000. Post-trial briefs were thereafter filed by the Plaintiff on May 1, 2000 and by the Defendant on April 28, 2000. The Plaintiff, on May 15, 2000, filed a "Reply" to the Defendant's post-trial brief. By stipulation before the Court, the parties waived the applicability of Section 51-183b
of the Connecticut General Statutes thereby permitting this Court to render its decision more than one hundred and twenty days from the completion date of the trial.
After consideration of all of the evidence that has been submitted in this matter and after careful assessment of the credibility of all of the witnesses who have testified in this matter, the Court finds the following facts:
1. On April 21, 1995, the Plaintiff, Michael P. Dolbey, was an inmate incarcerated at Garner Correctional Institution in Newtown, Connecticut.
2. On said date, Steven Therrien, was also an inmate incarcerated at the said Garner Correctional Institution.
3. At approximately 2:45 PM, inmate Steven Therrien approached the CT Page 9760 Plaintiff, Dolbey at or near Dolbey's cell in B-Block of the said Garner Correctional Institution and assaulted Dolbey.
4. As a result of said assault upon Dolbey by Therrien, Dolbey suffered injuries including severe trauma to head with numerous contusions to the head and face, abrasions to the right upper chest, comminuted nasal fracture and post-concussive syndrome.
5. As a result of the injuries that Dolbey suffered in said assault at the hands of Therrien, Dolbey was transported to and treated at Danbury Hospital.
6. Dolbey was admitted to Danbury Hospital on the date of the assault and was thereafter treated, discharged and returned to Garner Correctional Institution on April 25, 1995.
7. At the time of his assault on the Plaintiff, Inmate Therrien had a Department of Correction disciplinary history dating back fifteen years which disciplinary history included five prior "tickets" for assault the most recent of which occurred four years and eight months prior to the assault on Dolbey. In the ten years prior to the assault on Dolbey, Therrien received two tickets for assault: the one referenced above which occurred four years and eight months prior to the assault on Dolbey and a second one which occurred approximately ten years and six months prior to the assault on Dolbey. While it might have had some bearing on the inferences that the Court could reasonably draw from such information, the plaintiff offered no evidence as to whether the inmate Therrien was continuously incarcerated during that ten year and six month time period preceding the assault on Dolbey.
8. The disciplinary history of Inmate Therrien is consistent with and similar to the disciplinary histories of other inmates who have been in the corrections system for the same length of time that Therrien had been in the system and is not a disciplinary history that could reasonably have led Corrections officials to foresee that the inmate Therrien posed a risk of violence or danger to the plaintiff or any other inmate in the Corrections system.
9. Dolbey either knew Therrien or knew of Therrien since 1979 or 1980. Prior to the April 21, 1995 assault in this matter, Dolbey, by his own admission at trial, never had any problems with Therrien, never exchanged any bad words with Therrien and never had a fight with Therrien.
10. At the time of the assault by Therrien on Dolbey, Dolbey had no idea or reason to believe that the "attack was coming." CT Page 9761
11. At no time prior to the assault did Dolbey advise any Corrections Officer or other Corrections official that he (Dolbey) had any fear of Therrien or any reason to believe that he was in any way at risk of assault at the hands of Therrien.
12. While the Defendant, State of Connecticut, asserts that there is evidence to substantiate its claim that at the time of the assault on Dolbey there was justification for Inmate Therrien to be in the area or passing through the area where the assault took place, the Court is unpersuaded by such assertion. Moreover, the Defendant has offered no evidence to substantiate such claim other than the uncorroborated testimony of Major Rubbo that Therrien was issued a "pass" authorizing him to go to the "medical unit" immediately prior to the assault. The State was unable to produce such "pass" at the time of trial nor was the State able to produce any records from the "medical unit" or the "lab" that would substantiate the assertion that Therrien was authorized to be in the area or passing through the area where and when the assault on Dolbey took place.
13. The Department of Corrections, as a result of its own disciplinary investigation and proceedings, entered a finding that Inmate Therrien was "out of place" some forty minutes prior to the assault on Dolbey. This Court finds that Therrien was similarly "out of place" at the time of the assault on Dolbey. Simply stated, no credible evidence has been presented to the Court that would allow the Court to find otherwise.
14. At the time of the assault on Dolbey there were two Corrections Officers assigned to the B Block where the assault took place. Officer Sieling was in the "bubble" control center and Officer Wright was in the courtyard recreation area of B-Block.
15. When Officer Sieling became aware of the incident between Dolbey and Therrien, Sieling immediately contacted Officer Wright and called a "code blue" which is an alert to other Corrections officials that there is a fight in progress between inmates.
16. Officer Wright then responded to the area where the assault was taking place, ordered Therrien to stop assaulting Dolbey and Therrien did so. Thereafter, the area was secured and Dolbey was taken to an outside hospital for treatment.
17. Officer Seiling took reasonable and appropriate action upon becoming aware of the assault upon Dolbey. Seiling did not allow the assault on Dolbey to continue unabated. Rather, Seiling followed the appropriate procedures and took immediate and reasonable measures to abate the harm to Dolbey. CT Page 9762
18. Under the circumstances existing at the time of the assault, if Officer Seiling had left the "bubble" control center while the assault was taking place, an inmate (or inmates) who was at that time properly out of his cell engaged in recreational activities, could have gained control of the control center, opened all cell doors and created a risk of grave harm and injury to other inmates in B-Block and other staff responding to Officer Seiling's "Code Blue" call. Officer Seiling acted appropriately — he held his position, called the "Code Blue" and waited for other personnel to respond.
19. There is no merit, materiality or relevance to the Defendant State's claim that there was a "reason" for the assault on Dolbey by Therrien. The State's assertion that the reason for the assault involved contraband substances and Dolbey's alleged refusal to deliver contraband to an inmate in G-Unit at Therrien's request is not supported by any credible evidence and is based wholly on conjecture and speculation. Whether there was a "reason" for the assault is neither material nor relevant to the Plaintiff's action.
20. Evidence offered by the Plaintiff from inmates Irizarry and Valle and from the Plaintiff himself regarding Therrien's reputation for violence and mental instability is determined by the Court to be unreliable and not credible. The testimony Irizarry, Valle and Dolbey in this regard was instead based upon nothing more than second-hand information that has come to these witnesses through other inmates.
In the matter of Farmer v. Brennan, 511 U.S. 825 (1994), the United States Supreme Court held:
the Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349
(1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling, 509 U.S., at 31 . . . The (Eighth) Amendment also imposes duties on (prison) officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526-527 (1984). See Helling, supra, Page 833 at 31-32; Washington v. Harper, 494 U.S. 210, 225
(1990); Estelle, 429 U.S., at 103. Cf. DeShaney v.CT Page 9763 Winnebago County Dept. of Social Servs., 489 U.S. 189, 198-199 (1989).
 In particular, as the lower courts have uniformly held, and as we have assumed,
 "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (CA1) (internal quotation marks and citation omitted), cert. denied, 488 U.S. 823 (1988) Being violently assaulted in prison is simply not "part of the penalty that criminal offenders pay for their offenses against society." Rhodes, supra, at 347.
The Farmer court further held though, that "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. For a claim (as here) based upon a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." See Helling, supra, at 35. A prison official can avoid liability if he shows that he was unaware of any risk or that he responded reasonably to the risk, even if the harm ultimately was not averted. Farmer, supra.
It cannot be challenged then that prison officials in the State of Connecticut are under a duty to protect prisoners from violence at the hands of other prisoners. The question before the Court in the instant matter is whether the injuries suffered by the plaintiff Dolbey at the hands of his fellow inmate Therrien translate into liability on the part of the State of Connecticut. Resolution of that issue turns on the question of foreseeability and causation and upon a further determination by the Court as to whether the prison officials responded reasonably to the risk.
In the matter of Medcalf v. Washington Heights Condominium Assn.,57 Conn. App. 12 (2000) the Appellate Court of the State of Connecticut held that the elements in a negligence cause of action are duty, breach of that duty, causation and damages. citing Doe v. Manheimer,212 Conn. 748, 755, 563 A.2d 699 (1989), Stewart v. Federated Dept.Stores, Inc., 234 Conn. 597, 608, 662 A.2d 753 (1995).
To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct was the legal cause of the injuries. "The first component of legal cause is causation in fact. Causation in fact is the CT Page 9764 purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct." (Internal quotation marks omitted.) Doe v. Manheimer, supra, 757.
The second component is proximate cause. "Proximate cause establishes a reasonable connection between an act or omission of a defendant and the harm suffered by a plaintiff." W. Prosser W. Keeton, § 41, p. 263. "The Connecticut Supreme Court has defined proximate cause as [a]n actual cause that is a substantial factor in the resulting harm. . . . The substantial factor test reflects the inquiry fundamental to all proximate cause questions, that is, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." (Citations omitted; internal quotation marks omitted.)Suarez v. Sordo, 43 Conn. App. 756, 762, 685 A.2d 1144 (1996), cert. denied, 240 Conn. 906, 688 A.2d 334 (1997).
Proximate cause is a question of fact to be decided by the trier of fact. In issues involving proximate cause analysis, our Supreme Court has held that "an intervening intentional or criminal act relieves a negligent defendant of liability, except where the harm caused by the intervening act is within the scope of risk created by the defendant's conduct or where the intervening act is reasonably foreseeable. . . . As a general rule, the act of a third person in committing an intentional act or crime is a superseding cause of harm to another resulting therefrom. . . . In such a case, the third person has deliberately assumed control of the situation, and all responsibility for the consequences of his act is shifted to him." (Citations omitted; internal quotation marks omitted.) Id., 762-63; see also 2 Restatement (Second), Torts § 442B, comment (c) (1965). Recovery is barred in a negligence action where there is a lack of causal connection between the defendant's wrongful conduct and a plaintiff's injury. Cardona v. Valentin,160 Conn. 18, 24, 273 A.2d 697 (1970).
In its proximate cause and foreseeability analysis of the instant matter, this Court is also aided by consideration of the Court's holding in the matter of Allen G. Page and Bernard Herrick, Jr. v. John R.Manson, Civil No. 15370. Applying the analysis utilized by District Court Judge T. Emmet Clarie, of the United States District Court for the District of Connecticut in the Page case, the State of Connecticut can only be held liable for Dolbey's injuries if the plaintiff can establish (1) that Therrien was so disposed to commit acts of violence that he created a clear danger to the life and safety of the plaintiff; (2) that the Department of Correction (DOC) staff knew of the existence and severity of the threat posed by Therrien; (3) that there were available means by which the DOC staff could have eliminated the danger without CT Page 9765 unreasonably disrupting the security and administration of the institution; (4) that DOC staff knowingly and intentionally failed to implement the available means to eliminate the danger; and (5) that the failure to so act was an actual and proximate cause of the injuries suffered by the plaintiff.
In the instant matter, based upon the facts as found by the Court, the Plaintiff presented no credible evidence that the Therrien was so disposed to commit acts of violence that he created a clear danger to the life and safety of the plaintiff. Rather the evidence disclosed the fact that the last time that Therrien had been cited for assault, prior to the assault on Dolbey was for some four years and eight months prior thereto. The evidence further disclosed that neither Dolbey nor anyone else ever advised prison officials that Therrien was so disposed to commit acts of violence that he created a clear danger to the life and safety of the plaintiff or any other inmate at the institution. Rather the record disclosed that neither the plaintiff nor either of the other inmate witnesses presented by the plaintiff had ever been threatened by, assaulted by or experienced any problem of any type with Therrien.
No credible evidence has been presented that would show that the Department of Correction (DOC) staff knew of the existence and severity of any threat posed by Therrien. Therrien's prior disciplinary history in and of itself was not evidence of a violent propensity on the part of Therrien that would warrant special treatment by Corrections officials.
While there clearly were available means by which the DOC staff could have eliminated a danger of Therrien, or any other inmate, assaulting Dolbey without unreasonably disrupting the security and administration of the institution but the fact remains that DOC officials were unaware of any risk that Therrien posed to Dolbey or any other inmates and therefore had no reason to act. Hence, it cannot be said that DOC staff knowingly and intentionally failed to implement the available means to eliminate any danger posed by Therrien. Nor can it be said that the failure of DOC officials to so act was an actual and proximate cause of the injuries suffered by the plaintiff, Dolbey.
As for the Plaintiff's claim that Department of Correction officials' failure to promptly respond to abate the assault on Dolbey when the official(s) became aware of the assault, this Court is unpersuaded. The evidence shows, and the Court has found, that the response of prison officials to Therrien's assault on Dolbey was appropriate and reasonable under all of the circumstances then and there existing.
None of the foregoing findings however should be construed to suggest that Department of Correction officials are not and should not be subject CT Page 9766 to criticism for the manner in which they conducted their investigation of this incident which resulted in injuries so serious to an inmate that the inmate required hospitalization. It makes no sense that the "pass" upon which the Department of Correction based its conclusion that Therrien might properly have been in or passing through the area where the assault took place has been destroyed or was lost. It similarly makes no sense, if the State claims that Therrien was properly in the medical unit prior to the assault on Dolbey, that there are no records in the medical unit to confirm that Therrien reported to the medical unit at the time the State now claims Therrein was so present in the medical unit.
Proper procedures must be implemented to preserve such key evidence so it may be scrutinized at a later date either to vindicate the prison officials or to aid an innocent victim in the lawful prosecution of a civil action.
There is no doubt that the Plaintiff Dolbey was seriously injured as a result of an assault upon him by inmate Therrien. Although the Plaintiff urges that this Court find that those injuries were the result of a foreseeable and avoidable hazard, this Court cannot do so.
The fact of the matter is that the prisons of the State of Connecticut are filled with inmates, many of whom have violent propensities and some of whom may, without warning, assault and injure a fellow inmate. The Court finds that this is one of those cases referred to in the Farmer case, supra, wherein the injuries suffered by Dolbey do not translate into liability on the part of the State of Connecticut.
Judgment may accordingly enter for the Defendant
BY THE COURT
CARROLL, J.