[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE #195
On July 16, 1996 Communications Systems, Inc. (CSI), filed suit to recover commercial paper debts executed by the defendants, Louis Ceruzzi (Ceruzzi) and Westport Capital Associates, L.P. (WCA) (collectively the defendants). On September 8, 1997, the court, Hickey, J., granted CSI's motion to substitute Excalibur Financial Services, L.P. (Excalibur) as a party plaintiff in lieu of CSI. See Communications Systems, Inc. v. LouisCeruzzi, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 153343 (September 8, 1997, Hickey, J.). Excalibur, as the substituted plaintiff, filed a revised and sixth amended complaint on January 26, 2000. The defendants filed an answer, special defenses and counterclaim on May 16, 2001. The counterclaim is comprised of a single count, alleging a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[1]
The defendants allege the following pertinent facts in their counterclaim: On or around February 10, 1988, Ceruzzi executed a promissory note in favor of Citytrust in the principal amount of $355,000. On or around, March 15, 1988 Ceruzzi executed a promissory note in favor of Citytrust in the principal amount of $800,000. On or around August 9, 1991, the Federal Deposit Insurance Corporation (FDIC) was CT Page 611 appointed the receiver of Citytrust and holder of the two aforementioned notes. On or around June 30, 1992, the FDIC agreed to release Ceruzzi from liability on the two aforementioned notes. In consideration for this release, Ceruzzi entered into a settlement agreement with the FDIC and executed a third promissory note for the principal amount of $178,500 (the note). On or around July 26, 1994, the FDIC assigned the three aforementioned notes to the plaintiff. On or around November 13, 1995, the plaintiff assigned the three aforementioned notes, among other things, to Shelton Asset Corporation (Shelton), Seaview Asset Corporation (Seaview) and Princeton Asset Corporation (Princeton) but did not disclose this assignment to Ceruzzi. On or around July, 1997, the plaintiff notified Ceruzzi that it was the current holder of the note. At the same time, the plaintiff began sending Ceruzzi invoices reflecting monthly payments due and owing to the plaintiff on the note, and Ceruzzi made payments to the plaintiff.
On July 13, 2001, the plaintiff filed a motion to strike the defendants' counterclaim on the ground that it fails to state a claim upon which relief can be granted.
"A motion to strike tests the legal sufficiency of a cause of action and may properly be used to challenge the sufficiency of a counterclaim."Fairfield Lease Corp. v. Romano's Auto Service, 4 Conn. App. 495, 496,495 A.2d 286 (1985). A counterclaim is "a cause of action existing in favor of a defendant against a plaintiff which a defendant pleads to diminish, defeat or otherwise affect a plaintiffs claim and also allows a recovery by the defendant." (Internal quotation marks omitted.) Home OilCo. v. Todd, 195 Conn. 333, 341, 487 A.2d 1095 (1985). "The function of a motion to strike is to test the legal sufficiency of a pleading; it admits all facts well pleaded. See Practice Book § 152. The role of the trial court [is] to examine the [challenged pleading], construed in favor of the [pleading party], to determine whether the [pleading party has] stated a legally sufficient cause of action." Dodd v. MiddlesexMutual Assurance Company, 242 Conn. 375, 378, 698 A.2d 859 (1997). Thus, "[i]f facts provable in the [pleading] would support a cause of action, the motion to strike must be denied. . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a [pleading] challenged by [an opposing party's] motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Citations omitted; internal quotation marks omitted.) Gazov. Stamford, 255 Conn. 245, 260-61, 765 A.2d 505 (2001).
The plaintiff argues, inter alia, that its motion to strike should be CT Page 612 granted because the defendants' counterclaim fails to state a claim upon which relief can be granted. The plaintiff contends that the counterclaim is a CUTPA claim based on a vexatious litigation and that the party asserting such a claim must allege the termination of an underlying action in that party's favor. The plaintiff, therefore, argues that it is improper to assert a vexatious litigation in a CUTPA counterclaim because the underlying cause of action has not yet terminated in the defendants' favor. The plaintiff also argues that the defendants have violated the pleading rules by not pleading their counterclaim as clearly and precisely as possible.[2] The defendants respond that the motion to strike should be denied because their CUTPA counterclaim is alleged properly in that it is based on negligent misrepresentation, fraudulent nondisclosure, breach of contract and conversion.[3]
This court will first analyze whether the defendants' counterclaim sufficiently states a cause of action. "The policy behind CUTPA is to encourage litigants to act as private attorneys general and to bring actions for unfair or deceptive trade practices." (Internal quotation marks omitted.) Suarez v. Sordo, 43 Conn. App. 756, 772, 685 A.2d 1144
(1996), cert. denied 240 Conn. 906, 688 A.2d 334 (1997). "[B]ecause CUTPA is a self avowed remedial measure . . . it is construed liberally in an effort to effectuate its public policy goals." (Internal quotation marks omitted.) Associated Investment Co. Ltd. Partnership v. WilliamsAssociates IV, 230 Conn. 148, 158, 645 A.2d 505 (1994). Our General Assembly "deliberately chose not to define the scope of unfair or deceptive acts proscribed by CUTPA so tat courts might develop a body of law responsive to the marketplace practices that actually generate such complaints." (Internal quotation marks omitted.) Id., 157. "It is clear that CUTPA has come to embrace a much broader range of business conduct than does the common law tort action." (Internal quotation marks omitted.) Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 507,656 A.2d 1009 (1995). In fact, "CUTPA violations do not necessarily have to be based on an underlying actionable wrong. . . ." Hartford ElectricSupply Co. v. Allen-Bradley Co., 250 Conn. 334, 369, 736 A.2d 824
(1999).
"It is well settled that in determining whether a practice violates CUTPA [the Connecticut Supreme Court has] adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other business persons]. . . . All CT Page 613 three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Id., 367-68.
The defendants argue that the allegations in their counterclaim amount to a CUTPA cause of action based on negligent misrepresentation. With regard to the first prong of the "cigarette rule," the Connecticut Supreme Court "has long recognized liability for negligent misrepresentation. [It has] held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." (Internal quotation marks omitted.) Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559,575, 657 A.2d 212 (1995). Under the second prong of the "cigarette rule," "[a]llegations that the [plaintiff] knew or should have known facts that he did not disclose, if proven, may be concluded to be unethical, immoral, oppressive, and unscrupulous." Schur v. David Ogilvy andAssociates, Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 175461 (April 26, 2000, D'Andrea, J.) (27 Conn.L.Rptr. 103); see also Christensen v. Water Air, Inc., Superior Court, judicial district of Tolland at Rockville, Docket No. 065366 (March 16, 1998) (Sullivan, J.). Moreover, "knowledge of falsity, either constructive or actual, need not be proven to establish a violation of CUTPA." (Internal quotation marks omitted.) Kim v. Magnotta, 249 Conn. 94,108, 733 A.2d 809 (1999). For these reasons, this court concludes that a CUTPA claim can be based on a theory of negligent misrepresentation.
In this case, the defendants allege that the plaintiff held itself out to be the holder of the note when in fact the note had already been assigned to Shelton, Seaview and Princeton. These allegations imply unethical conduct on behalf of the plaintiff. Therefore, viewing the CUTPA counterclaim in a light most favorably to the defendants, this court finds that the defendants have stated a valid cause of action under CUTPA based on the plaintiffs negligent misrepresentation.
The defendants also argue in their memorandum of law that their allegations in their counterclaim amount to a CUTPA cause of action based on the plaintiffs fraudulent nondisclosure. "A violation [of CUTPA] may be established by showing . . . an actual deceptive practice. . . ." (Internal quotation marks omitted.) Muniz v. Kravis, 59 Conn. App. 704,713, 757 A.2d 1207 (2000). "[A] failure to disclose can be deceptive only if, in light of all the circumstances, there is a duty to disclose." (Internal quotation marks omitted.) Olson v. Accessory Controls Equipment Corp., 254 Conn. 145, 180, 757 A.2d 14 (2000). "Such a duty is imposed on a party insofar as he voluntarily makes disclosure. A party who assumes to speak must make a full and fair disclosure as to the CT Page 614 matters about which he assumes to speak." (Internal quotation marks omitted.) Duksa v. Middletown, 173 Conn. 124, 127, 376 A.2d 1099 (1977). Moreover, to be actionable for fraud, "[t]he nondisclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction." (Internal quotation marks omitted.) Jackson v. Jackson, 2 Conn. App. 179, 194, 478 A.2d 1026, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984).
In this case, the defendants allege that the plaintiff, despite not being the proper holder of the note, notified Ceruzzi that it was the current holder of the note. Moreover, the plaintiff began sending Ceruzzi invoices reflecting monthly payments due and owing to the plaintiff on the note. Viewing the counterclaim in a light most favorably to the defendants, this court finds that because the plaintiff voluntarily engaged in this conduct a duty is imposed upon it to disclose the proper owner of the note to Ceruzzi. For this reason, this court finds that the defendants have stated a valid cause of action under CUTPA based on the plaintiffs fraudulent nondisclosure.[4]
As to the plaintiffs second argument regarding the clarity of the counterclaim, "if the [plaintiff was] in doubt as to the nature of this claim or the legal theory underlying it, [it] could have sought a more particular description of the [counterclaim] by filing a request to revise." (Internal quotation marks omitted.) D'Ulisse-Cupo v. Board ofDirectors of Notre Dame High School, 202 Conn. 206, 220, 520 A.2d 217
(1987); see also Practice Book § 10-35.[5] "[T]he proper way to cure any confusion [regarding a counterclaim] is to file a motion to revise, not a motion to strike . . ." Rowe v. Godou, 209 Conn. 273, 279,550 A.2d 1073 (1988). If a party does not file a request to revise, "the court must construe the somewhat general and expansive allegations of fact in [a] favorable manner." Robichaud v. Hewlett Packard Co., Superior Court, judicial district of Waterbury, Docket No. 165706 (June 29, 2001,Hodgson, J.). In this case, the plaintiff did not file a request to revise the defendants' counterclaim. For this reason, this court will construe the counterclaim in a manner most favorably to the defendants.
This court notes that the plaintiff relies on a line of cases that holds that a vexatious litigation claim may not be asserted as a counterclaim in the same action claimed to be vexatious.[6] However, these cases and the plaintiffs argument are misplaced because the defendants' counterclaim is not based on a vexatious litigation theory of liability. For this reason, the line of cases relied on by the plaintiff is unhelpful and cannot serve as a basis to grant the plaintiffs motion to strike. CT Page 615
Given the liberal construction of CUTPA and the standard for a motion to strike, this court finds that, the defendants, by alleging deceptive practices based upon theories of negligent misrepresentation and/or fraudulent nondisclosure, have sufficiently stated a CUTPA cause of action in their counterclaim. Accordingly, the plaintiffs motion to strike the defendants' counterclaim is denied.
 ___________________ MINTZ, J.