[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE POST TRIAL MOTION
 I
This case was tried to a jury, which rendered a verdict on January 23, 2002 in favor of the defendants. In summary, the facts were that the plaintiff, one Saturday night in December 1998, was on property claimed to be owned by the defendant Girard Brothers, and while driving his van on a dirt road through a rear portion of the property, drove it over the edge of an embankment and rolled thirty feet to the bottom of a gravel pit and was injured. Subsequently, the plaintiff argued his motion to set aside the verdict on three evidentiary grounds that: 1) The evidence demonstrated the plaintiff was not a trespasser on the defendant's property on the date of the accident; 2) the evidence demonstrated that the defendants failed to warn the plaintiff of the dangerous conditions of the property caused by the gravel operations; 3) the defendants failed to demonstrate that the plaintiff was impaired or did not otherwise use his faculties and contribute to the accident, as claimed by the defendants.
For the reasons set forth in detail below, the court denies the motion.
 II CT Page 6551 DISCUSSION
A. Standard of Review Concerning Motion to Set Aside a Verdict.
"When considering a motion to set aside the verdict, this court's function is to `determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict.'" (Internal quotation marks omitted.) Skrypiec v. Noonan,228 Conn. 1, 10, 633 A.2d 716 (1993), Preston v. Wellspeak,62 Conn. App. 77, 81, 767 A.2d 1259 (2001). "A trial court may set aside a verdict on a finding that the verdict is manifestly unjust because, given the evidence presented, the jury mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case could be applied." Card v. State, 57 Conn. App. 134, 138,747 A.2d 32 (2000). "A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." (Internal quotation marks omitted.) Kurti v. Becker, 54 Conn. App. 335, 337, 733 A.2d 916, cert. denied, 251 Conn. 909, 739 A.2d 1248 (1999).
"Before determining whether the granting of a motion to set aside is proper, the trial court must look at the relevant law that it gave the jury to apply to the facts, and at the facts that the jury could have found based on the evidence. The law and evidence necessarily define the scope of the trial court's legal discretion. . . . This discretion vested in the trial court is not an arbitrary or capricious discretion, but rather, it is legal discretion to be exercised within the boundaries of settled law. . . . This limitation on a trial court's discretion results from the constitutional right of litigants to have issues of fact determined by a jury. . . . The trial court, upon a motion to set aside the verdict, is called on to question whether there is a legal reason for the verdict and, if there is not, the court must set aside the verdict." (Citations omitted; internal quotation marks omitted.) Suarez v. Sordo,43 Conn. App. 756, 759-60, 685 A.2d 1144 (1996), cert. denied,240 Conn. 906, 688 A.2d 334 (1997).
B. Legal Claims
In this case, the complaint was originality in four counts, two in negligence against each of the two corporate defendants and two in private nuisance. The court directed a verdict on the two private nuisance counts, leaving the two negligence claims. The first was against Girard Brothers, which it was claimed owned, was in control and possession of the private property on which this incident occurred. The compliant alleged that it failed to inspect the property, failed to warn the plaintiff of the dangerous conditions, failed to erect safeguards and CT Page 6552 failed to remedy a hazardous condition. The other remaining count was against the second corporate entity, Simscroft Echo Farms, made up of the same individuals as Girard Brothers. that operated gravel removal operations on a rear portion of the property. The same negligence claims were asserted against it. The court provided the jury with instructions about both of these claims.
In addition, a third defendant, who owned and operated the cement plant, for which the plaintiff's father's company had a dry cement supply contract, was no longer involved, as the claims against it were settled prior to trial. The jury did not know of these claims or that they had been settled, but the jury did know that the plaintiff was there that evening in connection with the cement delivery contract to check on how much dry cement was needed.
(1) Duty to Warn
With regard to the second of the three evidentiary claims made by the plaintiff, the jury could have concluded that Girard Brothers did not control and possess the property, or that it had, under the circumstances of this case, no duty to warn someone such as the plaintiff on its private property late at night after ordinary business hours, or even that the conditions then existing were not especially hazardous to the plaintiff and others similarly situated. Also, the same findings, except ownership, could also have been made regarding the second corporate defendant. Since there was only a general verdict form and no jury interrogatories were requested, the jury's exact findings on these points cannot be known. Nonetheless, the court concludes that there was sufficient contrary evidence to the plaintiff's claims to support any of these three findings, all of which would support the jury's verdict and legal conclusions.
Even if the jury found there was such a duty to warn, because the plaintiff was totally disabled prior to this accident and the medical evidence as the injuries he received in this accident was equivocal, the jury could reasonably have concluded that the injuries were pre-existing and not caused by this incident.
And finally, the jury could have found the plaintiff's testimony about how the incident happened not worthy of belief. The plaintiff, while not seat belted in his van, was inside his van when it rolled over several times and down a thirty-foot embankment and landed right side up. His cell phone, he testified, at the end of this long tumble, was on the seat next to him and he was able to crawl some distance before he could receive a signal and call for help. He had previously had failed back-surgery syndrome and was at that point already totally disabled. CT Page 6553 Nonetheless, he did not remain in the hospital emergency room long that evening and was able the next day, with his spouse, to drive back to the accident site, take pictures and examine the location in daylight.
(2) The plaintiff as trespasser
The special defenses filed by the defendants included contributory and comparative negligence as well as the claim that the plaintiff was a trespasser. Had the jury found the facts supporting any of the legal conclusions set forth above, they would not have needed to determine whether or not he was a trespasser. In view of the testimony of the officers of Girard Brothers and the cement company, who owned a portion of the property and against whom the plaintiff's claims were settled prior to trial, these parties were fairly relaxed about which of their suppliers was on the property on which the embankment was located. The jury could reasonably have concluded, as the plaintiff claims, that the plaintiff was not a trespasser, but in view of the other conclusions they could have reached, this mere fact would not have been of any assistance to the plaintiff.
(3) Whether the plaintiff was impaired or did not use his faculties to avoid the accident
For the reasons previously stated, the jury may never have reached this issue raised in the special defenses. But if they had, there were facts in evidence from which the jury could have inferred that the plaintiff regularly took strong pain medication for his previous back injury and was impaired that evening. There was also evidence from which they could have concluded that he failed to use his faculties to avoid the accident. He testified that when he was in the rear portion of this property he saw a large puddle and tried to drive around it. His right front wheel was caught by the embankment and he testified that he went over the edge. An alert person, knowing of the gravel pit to the rear of the area, might have gotten out of the car to check the depth of the puddle, might have driven cautiously to the left or might, after having veered right, stopped when the right wheel began to engage the sandy embankment and backed up. The jury could have found any of these facts which defeat the plaintiff's claims.
There was also unconverted evidence that this was a dirt road which led to another exit from the cement operations and that it was used by trucks during the daylight hours on occasion, although the paved portion of the private road leading into the cement plant and its parking lot would have provided more than adequate space for the plaintiff to turn his van around and reach the public highway. His reasons for being in this rear portion to check on the number of cement forms and a small batch plant could also CT Page 6554 have seemed suspect to the jury.
For all of the foregoing reasons, the court finds the jury's verdict is supported by facts they reasonably could have found. For these reasons, the court denies the motion to set aside the verdict.
BY THE COURT
BARBARA M. QUINN, Judge